PUBLIC VERSION

## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| PIRELLI TYRE CO., LTD., PIRELLI TYRE S.P.A., AND PIRELLI TIRE LLC, | |
| *Plaintiffs,* | |
| *and* | |
| SHANDONG NEW CONTINENT TIRE CO., LTD., | |
| *Plaintiff-Intervenor* | Court No. 20-00115 |
| *v.* | <u>PUBLIC VERSION</u> |
| UNITED STATES, | |
| *Defendant,* | |
| *and* | |
| THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, | |
| *Defendant-Intervenor.* | |

## <u>DEFENDANT-INTERVENOR USW'S COMMENTS IN OPPOSITION TO REMAND RESULTS</u>

Roger B. Schagrin
Nicholas J. Birch
SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C.  20001
*Counsel for USW*

Dated: July 8, 2022.

PUBLIC VERSION

## TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................. 1

II. STATEMENT OF FACTS ................................................................. 2

    a. Notice of Fraud .................................................................. 2

    b. Reopening of the Review ..................................................... 3

    c. Proceedings in the Reopened Review ..................................... 4

      i. Supplemental Questionnaires ......................................... 5

      ii. Commerce's Draft Redetermination ............................... 8

      iii. USW Comments in Rebuttal to Commerce's Redetermination ................ 9

      iv. Commerce's Final Redetermination ............................... 12

III. STANDARD OF REVIEW ............................................................. 14

IV. ARGUMENT .............................................................................. 18

    a. Commerce Failed to Address Record Evidence Conflicting with Its Acceptance of New Continent's Reporting ...................................... 18

    b. Commerce Failed to Explain Why the Issue of Fraud on CBP was Not Relevant or to Address Evidence of New Continent's Involvement in that Fraud ...................................................................................... 24

V. CONCLUSION ............................................................................ 27

<u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Ad Hoc Shrimp Trade Action Comm. v. United States*, 992 F. Supp. 2d
1285 (Ct. Int'l Trade 2014) ......................................................................... 25

*Bio-Lab, Inc. v. United States*, 392 F. Supp. 3d 1264 (Ct. Int'l Trade
2019) ............................................................................................................ 17, 26

*Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, L.Ed.2d 106 (1973) .............................. 15

*Coal. of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340
(Ct. Int'l Trade 2020) ...................................................................................... 15

*Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 59 S. Ct.
206, 83 L. Ed. 126 (1938) ............................................................................. 14

*CS Wind Vietnam Co. v. United States*, 832 F.3d 1367 (Fed. Cir. 2016)....... 14, 16, 18

*NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir.
2009) ............................................................................................................ 15, 16

*Papierfabrik Aug. Koehler AG v. United States*, 180 F. Supp. 3d 1211
(Ct. Int'l Trade 2016) ...................................................................................... 18

*Papierfabrik Aug. Koehler SE v. United States*, 843 F.3d 1373 (Fed.
Cir. 2016) .......................................................................................................... 25

*Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 110 S. Ct. 2668,
110 L. Ed. 2d 579 (1990) .............................................................................. 16

*Pirelli Tyre Co. v. United States,* 539 F. Supp. 3d 1257, 1260 (Ct. Int'l
Trade 2021)................................................................................................... 1, 2, 3

*Shanxi Hairui Trade Co. v. United States*, No. 2021-2067, 2022 WL
2443960 (Fed. Cir. July 6, 2022)................................................................. 25

*SKF USA Inc. v. United States*, 263 F.3d 1369 (Fed. Cir. 2001) .............................. 16

*SKF USA, Inc. v. United States*, 630 F.3d 1365 (Fed. Cir. 2011) ....................... 15, 18

*Tianjin Magnesium Int'l Co. v. United States*, 36 C.I.T. 683 (2012) ........................ 17

*Timken U.S. Corp. v. United States*, 421 F.3d 1350 (Fed. Cir. 2005)................. 15, 26

*Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 71 S. Ct. 456, 95 L.
Ed. 456 (1951).......................................................................................... 14, 15, 18

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370
(Fed. Cir. 2013)................................................................................................ 15

**<u>Statutes</u>**

19 U.S.C. § 1516a(b)(1) ............................................................................................. 14

19 U.S.C. § 1677f(i)(3)(A).......................................................................................... 15

PUBLIC VERSION

## I.  <u>INTRODUCTION AND SUMMARY OF THE ARGUMENT</u>

The U.S. Department of Commerce ("Commerce") requested a remand of this administrative review determination so that it could investigation new evidence received from U.S. Customs and Border Protection ("CBP") that the review may have been tainted by fraud. *See Pirelli Tyre Co. v. United States,* 539 F. Supp. 3d 1257, 1260 (Ct. Int'l Trade 2021) (ECF No. 37 at 7-8). In its redetermination on remand, Commerce made the determination that the sole mandatory respondent it had reviewed, Shandong New Continent Tire Co., Ltd. ("New Continent"), had reported accurate sales information to Commerce during the review and that the record did not establish that New Continent had a role in any fraud. *See Final Results of Redetermination*, ECF No. 55 ("*Final Results*").

However, New Continent's claims that Commerce accepted the accuracy of the information New Continent submitted and New Continent's role in matters were widely contradicted by the evidence on the reopened record before the agency. In makings its decision, Commerce failed to address significant issues stemming from this opposing evidence, failed to provide a meaningful explanation of how the evidence it stated was relied upon supported the decision it did reach, a failed to address issues that bore substantially on the matters before it, even when those issues were specifically raised by United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("Defendant-Intervenor" or "USW").

PUBLIC VERSION

As such, Commerce's remand decision is not supported by substantial evidence and fails to provide the reasoned path from the evidence before it to its decision as is required of the agency. Commerce's redetermination must therefore be remanded to the agency so that it can address these matters and reach a decision supported by the evidence.

## II.   <u>STATEMENT OF FACTS</u>

This case began as Plaintiff Pirelli's challenge to Commerce's final determination in the 2017-2018 annual review of the antidumping duty order on passenger vehicle and light truck ("PVLT") tires from China. *See Pirelli*, ECF No. 37 at 2. Pirelli challenged Commerce's authority and decision to treat Pirelli as part of the China-wide entity. *Id.* at 2-3. The Court stayed that challenge, on Pirelli's motion, awaiting the U.S. Court of Appeals for the Federal Circuit's decision in another case involving similar challenges. *Id.* at 4.[1]

### a.   **Notice of Fraud**

While this case was stayed, Commerce received notice from CBP that CBP had reviewed the record from Commerce's proceeding and found that it conflicted with information submitted to CBP on many entries, identifying over $2 million in differences in the information submitted to the two agencies. *See id.* at 7; *United States Motion to Remand*, ECF No. 29 at 2. Defendant therefore sought a lifting of the stay and a voluntary remand from this Court, seeking to revisit the rate it calculated for the sole mandatory respondent in the review, Shandong New

---

[1] Those challenges were rejected by the Court of Appeals. *See Pirelli*, ECF No. 37 at 4.

Continent ("New Continent"), to determine if that rate had been tainted by fraud. *Id.*, ECF No. 29 at 4-5.

Recognizing that Commerce "has a substantial and legitimate interest in protecting the integrity of its proceedings from fraud," and that the issue is relevant to the case before the Court as the rate calculated for New Continent is the sole basis for the separate rate Pirelli seeks to have applied to it, the Court granted Defendant's request. *See Pirelli*, ECF No. 37 at 8-9.

### b.   Reopening of the Review

Commerce then reopened the record to allow parties to submit information in response to that submitted by CBP. New Continent submitted a massive response, claiming that invoices that had [                    ] with [

                    ] were [

                    ]. *New Continent New Factual Information*, R.C.R. 5, R.P.R. 17 at 29.[2] New Continent also admitted that it had [

                    ] New Continent's U.S. affiliate Comforser [                    ]; though New Continent [

                    ]. *Id.*, R.C.R. 5 at 3. New Continent also claimed though that [

                    ]. *Id.*, R.C.R. 5 at 3, fn. 3.

---

[2] In these comments, citations to the public and confidential records of the original review are made as "P.R." and "C.R." respectively; while citations to the reopened record on remand are made as "R.P.R." and "R.C.R.".

New Continent argued that it had reported to Commerce in the
administrative review its actual prices to its U.S. customers, but claimed that [


] New Continent. *Id.*, R.C.R. 5 at 3, 29. New Continent
submitted [                                                                                          ] in
Exhibit 10 of its submission. *Id.*, R.C.R. 5 at 29. New Continent also submitted what
it claimed were its invoices in Exhibit 19, along with claimed payment information
for those invoices. *Id.*, R.P.R. 17 at 30. New Continent also had to submit a table
showing the invoice numbers that New Continent had reported originally to
Commerce during the review and that had been reported to CBP and what that
invoice number was in the documentation New Continent was now submitting. *Id.*,
R.P.R. 17 at 25 and Exhibit 18, page 1.

### c.   Proceedings in the Reopened Review

Defendant-Intervenor then began to point out the massive inconsistences in
New Continent's claims and the documentation it submitted. Defendant-Intervenor
pointed out that New Continent's admission [

                                                    ] conflicted with New Continent's reporting during the
review that could not report the importer of record. *USW Rebuttal Comments*,
R.C.R. 35, R.P.R. 28 at 5-6. Defendant-Intervenor also used New Continent's table
of invoice numbers [                                                                          ] New
Continent now submitted to Commerce. *See id.*, R.C.R. 35 at 8. Defendant-
Intervenor showed that New Continent's claim [

                                    ] could not be accurate.

4

The [

].   Those [          ] New Continent now claimed [

].

*Id.*, R.C.R. 35 at 8-9. But in [                        ] to Commerce during the

review many months before New Continent [

], New Continent had [                        ].

Defendant-Intervenor provided Commerce with specific examples showing how New

Continent's reporting to Commerce [                              ]

numbers but the [                              ].

*Id.*, R.C.R. 35 at Exhibits 1-3.

    Defendant-Intervenor further pointed out other evidence conflicting with

New Continent's claims to have not been [                            ]; such

as that [                          ] that were submitted [

] and now with New Continent's [

    ] showed that [                                      ],

not [                        ] as New Continent claimed. *Id.*, R.C.R. 35 at 10.

Defendant-Intervenor also pointed out other inconsistencies in the documents and

claims New Continent had made. *See id.*, R.C.R. 35 at 15-20.

### i.    **Supplemental Questionnaires**

    In response, Commerce issued a questionnaire to New Continent regarding

the issues with New Continent's submission. *Supplemental Questionnaire*, R.C.R.

41, R.P.R. 35. Commerce asked New Continent to explain specific inconsistencies

between the [                                      ] and

what New Continent submitted as the correct [                    ] New Continent's

[                                        ]. *Id.*, R.C.R. 41 at 4-6. Commerce also instructed

New Continent to provide [                                    ] supporting New

Continent's claims [

                            ] it had submitted. *Id.*, R.C.R. 41 at 6. Commerce also

issued a questionnaire to NBR. *See Final Remand Results*, ECF No. 55 at 4.[3]

 In its response, New Continent continued to insist that that it was not

involved with the invoices that had been [                        ]. *New Continent*

*Response*, R.C.R. 44/R.P.R. 42 at 9. New Continent sought to excuse its [

                                ] to Commerce as a simple failure of its

management to sufficiently review its records. *Id.*, R.C.R. 44 at 11. New Continent

sought to excuse other [                                        ] as "minor mistakes…due to

human error." *Id.*, R.C.R. 44 at 15, 16, 18-19, 20. New Continent explained the

existence of [                                    ] was due to New Continent's

maintaining its records in Excel and so [

                            ] was not fixed. *Id.*, R.C.R. 44 at 15-16. For

one invoice, New Continent claimed that it had mistakenly submitted "the incorrect

version of the invoice for the NFI submission," which it claimed was only "an offer

during the negotiation." *Id.*, R.P.R. 42 at 19. New Continent then provided another

version of the invoice, claiming this was the correct one that corresponded with New

Continent's reporting during the review. *Id.*

---

[3] NBR refused to answer Commerce. *See Final* Results, ECF No. 55 at 14.

New Continent also claimed to have provided payment documentation for all invoices in Exhibit S-9 to its response. *Id.*, R.P.R. 42 at 21. However, New Continent explained, its accounting does not provide a "one-to-one link between the payment and the invoice." *Id.* New Continent claimed that, regardless, its submission showed that "the recorded credits fully offset the debits," proving, New Continent claimed, that "it was paid for all issued invoices to its customers." *Id.*, R.P.R. 42 at 21.

Defendant-Intervenor again pointed out to Commerce the multiple issues with New Continent's response, starting with the fact that New Continent still provided no explanation of [

    ] its reporting to Commerce [

    ]. *USW Feb. 2 Comments*, R.C.R. 67, R.P.R. 44 at 14-15. Defendant-Intervenor further pointed out the problematic nature of New Continent's last-minute revelation that it was not providing actual sales documents, but was producing documents from Excel as needed and how other explanations New Continent now provided where controverted by the record. *Id.*, R.P.R. 44 at 16-20.

Commerce then issued a second questionnaire to New Continent. In this response, New Continent for the first time claimed that received payment for one of [                                    ], "it was unable to directly match the payment amount with its invoice" *New Continent 2nd Response*, R.C.R. 71, R.P.R. 56 at 4. New Continent claimed that its personnel worked with the customer to reconcile payments and invoices, but in the process recorded the [        ] invoice numbers from [            ] records. *Id.* New Continent then claimed its management had

PUBLIC VERSION

simply erroneously used those recorded [                    ] in its reporting to

Commerce. *Id.* New Continent provided no documentation or supporting evidence

for these claims. *See id.*, R.C.R. 71 at 4-5. New Continent also sought to excuse

other inconsistencies identified in its reporting as simple clerical errors. *See id.*

R.C.R. 71 at 6-7.

### ii.    Commerce's Draft Redetermination

In its draft redetermination, Commerce accepted New Continent's claims and

stated that it found that New Continent had accurately reported. *Final Results*,

ECF No. 55 at 8. Commerce stated that it was focusing on [

], not [

]. *Final Results*, ECF No. 55 at 7. Commerce stated that

it "analyzed the [

] submitted by New

Continent for [                    ] identified in the CBP Referral," and

claimed "to tie the payment amounts to the U.S. sales value reported by New

Continent in its U.S. sales database … [                    ]." *Id.*, ECF No. 55 at

8. Commerce stated that the matching prices and values in sources supported New

Continent's claims that "[                    ]" of the fraudulent documentation

that had been submitted to CBP and New Continent's use of those invoice numbers

was a simple mistake. *Id.*

### iii.   USW Comments in Rebuttal to Commerce's Redetermination

In comments to Commerce on that draft decision, Defendant-Intervenor raised a number of issues it believed Commerce had overlooked that showed Commerce's determination to be incorrect. First, Defendant-Intervenor argued that the record was clear that New Continent [

] and that New Continent's excuses for these were contradicted by evidence on the record. Defendant-Intervenor pointed to the invoice that New Continent claimed was an "offer" accidently submitted instead of the later-submitted final version. *USW April 7 Comments*, R.C.R. 84, R.P.R. 63 at 7-8. Defendant-Intervenor explained that the "offer" version of the invoice that New Continent claimed was produced during the sale negotiation still showed the [

] made on, the [

] would then [                ], and even the [                ] that would eventually [                ]. *Id.*, R.C.R. 84 at 8-9.

Defendant-Intervenor also pointed out that New Continent's claims that the [                ] on the record could be explained away as [

] conflicted with examples on the record which showed some [                ] showed such [        ] while other examples [                ]. *Id.*, R.C.R. 84 at 11 and Exhibits 1 and 2. Defendant-Intervenor argued that this evidence proved that New Continent in fact had [

] and had repeatedly mislead Commerce in its claims on its record keeping.

9

PUBLIC VERSION

Further, Defendant-Intervenor disagreed that New Continent's claims to

[                                    ] in fact supported New Continent's claims of the accuracy

[                                ] the information it had reported to Commerce in

the original review. Defendant-Intervenor explained to Commerce that the

information that New Continent claimed showed [                    ] did not show

[                                ], but instead only [

                    ] into what New Continent alleged [


    ]. *Id.*, R.C.R. 84 at 17. Such [                    ] made it impossible to

determine [                    ] for a specific sale. *Id.*

    Defendant-Intervenor provided a specific example from New Continent's

submissions of [                                ] that was alleged to cover [

                                    ].

Defendant-Intervenor pointed out that even New Continent's [


    ]. *Id.*, R.C.R. 84 at 18. After [                    ] documentation

submitted by New Continent, Defendant-Intervenor further showed that [

                            ] the documentation and that [

                                ] than that claimed

by New Continent. *Id.*, R.C.R. 84 at 18-19. Thus, Defendant-Intervenor argued, the

record did not support the conclusion that [

                    ] reported by New Continent, [

10

PUBLIC VERSION

] and the [                                    ]
made it impossible to determine [                                    ]
were reported by New Continent.

Moreover, Defendant-Intervenor showed that [                    ] did the
[                                    ] actually identify [
    ]; and in that [                                    ] conflicted with the
[          ] submitted by New Continent, with the [
                              ] and the [
                                    ]. *Id.*, R.C.R. 84 at 19-20. Thus, Defendant-
Intervenor argued, the only [          ] information on the record conflicted with New
Continent's claims and the [                                    ] only revealed
further unresolved issues with New Continent's reporting. *Id.*, R.C.R. 84 at 20.

Next, Defendant-Intervenor pointed to record evidence that refuted
Commerce's determination that New Continent had not been in on the fraud
[                    ] and New Continent's claim that it only [
        ] in its reporting to Commerce due to a reasonable mistake. Not only had
New Continent never mentioned that claim until [
                                    ] was repeatedly
pointed out, New Continent has specifically reported to Commerce during the
original review that the [                                    ] was one of New
Continent's own [                              ], not something [
        ] New Continent. *Id.*, R.C.R. 84 at 21-22.

Further, Defendant-Intervenor explained, those claims also were in conflict
with [                          ] the record, specifically with [                          ] that
were [                          ] by New Continent to Commerce. While New
Continent claimed that [

], as New Continent claimed it had [

] at that point, the [

] New Continent as the [                          ]. *Id.*, R.C.R.
84 at 23-24. That information agreed with what was shown on the [

], not the [

]. Defendant-Intervenor explained that Commerce would have
to accept that [

] New Continent as [

] and then [

] in order to accept New
Continent's claims as true. *Id.*

### iv.    Commerce's Final Redetermination

In its final results of redetermination, Commerce stated that it was not
persuaded by these arguments. Commerce stated that in its view the "record of this
remand does not establish which party created or prepared the [

]." *Final Results*, ECF No. 55 at 14. But, Commerce argued, that was
irrelevant, as the only issue it was addressing was whether [

] were accurate. *Id.*, ECF No. 55 at 15. Commerce addressed the example
submitted by Defendant-Intervenor showing [

12

], but stated that as the prices and quantity [

], there were no inconsistencies.

*Id.*

Commerce further stated that it accepted New Continent's explanation that New Continent had obtained the [                              ] through a payment reconciliation even if it had [

]. *Id.*, ECF No. 55 at 17. Commerce also stated that it accepted "New Continent's explanation of the steps it takes to ensure finalized invoices are not modified after issuance," which it stated "is described further below." *Id.* However, Commerce provided no further explanation of what those steps were or how they comported with New Continent's claims regarding the [

]. *See id.*, ECF No. 55 at 18-23.

Commerce stated that Defendant-Intervenor had failed to point to any evidence on the record that "[

]." *Id.*, ECF No. 55 at 17. Commerce pointed instead to the [              ] that had been submitted in both the original and in the reopened review. Commerce stated that these supported New Continent's claim that it could not produce identical versions of its documents from its electronic records. *Id.*, ECF No. 55 at 18. Commerce also stated that it would not be reasonable to expect that New Continent would have kept the actual records following the closure of the original review. *Id.*

Commerce again stated that it had "analyzed the [



] submitted by New Continent" and found them to be sufficient

to show "that New Continent received full payment of the values reported to

Commerce as sales." *Id.*, ECF No. 55 at 19. Commerce did not provide any further

detail into the analysis it performed to reach this conclusion. *See id.*

Based on its decision to accept New Continent's reporting as accurate,

Commerce announced it would make no changes to its original determination in the

review. *Id.*, ECF No. 55 at 22.

## III.   <u>STANDARD OF REVIEW</u>

The statute directs the Court to "hold unlawful any determination, finding, or

conclusion found ... to be unsupported by substantial evidence on the record, or

otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1). "Substantial

evidence is more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Consol. Edison

Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126

(1938). Substantial evidence requires not just the presentation of evidence

supporting a position, but "must take into account whatever in the record fairly

detracts from its weight." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488, 71

S. Ct. 456, 464, 95 L. Ed. 456 (1951); *see also CS Wind Vietnam Co. v. United States*,

832 F.3d 1367, 1373 (Fed. Cir. 2016) (stating the same). It cannot ignore

"contradictory evidence or evidence from which conflicting inferences could be drawn." *Universal Camera*, 340 U.S. at 487, 71 S. Ct. at 464 (1951).

In order to meet this substantial evidence standard, while Commerce need not address every piece of evidence presented by a party, "Commerce is obligated to respond to those arguments made by interested parties that bear on issues material to Commerce's determination." *Coal. of Am. Flange Producers v. United States*, 448 F. Supp. 3d 1340, 1351 (Ct. Int'l Trade 2020); *see also SKF USA, Inc. v. United States*, 630 F.3d 1365, 1374 (Fed. Cir. 2011) ("…Commerce also has an 'obligation' to address important factors raised by comments from petitioners and respondents."). In other words, "{t}his standard requires Commerce to examine the record and articulate a satisfactory explanation for its action." *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013).

And while this Court may uphold a Commerce determination where Commerce's explication is lacking in some respect, but in such cases "the path of Commerce's decision must be reasonably discernable to a reviewing court." *NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009); *see also* 19 U.S.C. § 1677f(i)(3)(A) (requiring that Commerce provide "an explanation of the basis for its determination that addresses relevant arguments"). Commerce must explain its path from the record to the determination it reaches "with sufficient clarity to permit 'effective judicial review'" of that path. *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) (*quoting Camp v. Pitts*, 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)); *see also Pension Ben. Guar. Corp. v.*

*LTV Corp.*, 496 U.S. 633, 654, 110 S. Ct. 2668, 2680, 110 L. Ed. 2d 579 (1990)

(requiring "that an agency take whatever steps it needs to provide an explanation

that will enable the court to evaluate the agency's rationale at the time of

decision."). The Court "cannot reasonably discern Commerce's path {where} there

does not appear to be a reasonable way to consider the data as a whole and arrive at

Commerce's conclusion…." *NMB Singapore*, 557 F.3d at 1326. Without a clearly

discernable path, the Court risks misunderstanding the reasons Commerce actually

rested its determination on and so affirming that determination on a basis different

than that the agency used, thereby "making choices reserved to the agency." *CS

Wind*, 832 F.3d at 1367.

  This need for a sufficiently clear path to the determination makes it

"necessary for Commerce to explain the factual settings for the calculations at issue,

and explain exactly how those calculations are made." *SKF USA Inc. v. United

States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001), *aff'd*, 332 F.3d 1370 (Fed. Cir. 2003).

The Court cannot else ascertain if those calculations support Commerce's

determination. Commerce is the expert agency charged with the administration of

antidumping laws, but Commerce's "'experience and expertise'… do not substitute

for the explanation,….{that requirement} still demands an adequate explanation in

the particular matter." *CS Wind*, 832 F.3d at 1377. Likewise, Commerce must

address the evidence before it, it cannot "take {a} statement at face value despite

record evidence potentially detracting from this conclusion" and still provide the

Court the necessary explanation of how the evidence supports the determination

made. *Bio-Lab, Inc. v. United States*, 392 F. Supp. 3d 1264, 1270 (Ct. Int'l Trade 2019).

This Court has found that a Commerce determination is not supported by substantial evidence where Commerce fails to address issues of fraud committed on the agency. In *Tianjin Magnesium v. U.S.*, the Court rejected Commerce's decision to take no action against a respondent who submitted documentation known to be fraudulent to Commerce in an annual review of an antidumping duty order. *Tianjin Magnesium Int'l Co. v. United States*, 36 C.I.T. 683 (2012). The Court explained that Commerce "never addresses the conduct by Tianjin that is squarely violative of the {respondent's} obligations" of full cooperation to the best of its ability. *Id.*, 36 C.I.T. at 689. Instead, "Commerce simply removed Tianjin's conduct from consideration" by failing to address it. *Id.* The Court also held that in doing so, Commerce failed to explain why this case was different from other cases "affirming that where a party provides inaccurate or misleading information, it has not cooperated to the best of its ability." *Id.*

The Court further recognized that by not addressing issues of fraud, Commerce created incentives for respondents to submit falsified documentation, as it showed that even if the fraud where discovered, no consequences would result. *Id.* The Court summarized that "{w}ithout a legitimate basis that can be discerned in the record, Commerce declined to consider the submission of misleading and inaccurate documentation by Tianjin…." *Id.*, 36 C.I.T. at 690. This Court has elsewhere agreed that failing to creating an adverse outcome to a party that has so

violated its duty of good faith by fraudulently responding to the agency "would allow a party to game the system and not provide truthful information when it is required to do so." *Papierfabrik Aug. Koehler AG v. United States*, 180 F. Supp. 3d 1211, 1224 (Ct. Int'l Trade 2016), *aff'd sub nom. Papierfabrik Aug. Koehler SE v. United States*, 710 F. App'x 889 (Fed. Cir. 2018).

## IV.   <u>ARGUMENT</u>

In its final results of redetermination, Commerce repeatedly failed to take into account substantial evidence which detracted considerably from the weight of the evidence Commerce did accept and failed to respond to material arguments before it. Therefore, Commerce's final results are not supported by substantial evidence and are contrary to law. *See Universal Camera Corp.*, 340 U.S. at 488, 71 S. Ct. at 464; *SKF USA*, 630 F.3d 1374. Commerce's decision memorandum fails to provide a clear view of the path it chose from the evidence on the record as a whole to the determination it reached, which prevents this Court from fairly reviewing that determination and deciding if the choice actually made by Commerce on these important issues is supported by substantial evidence. *See CS Wind*, 832 F.3d at 1367.

### a.   **Commerce Failed to Address Record Evidence Conflicting with Its Acceptance of New Continent's Reporting**

In its final remand results, Commerce repeatedly states that its acceptance of New Continent's reporting as accurate is based on Commerce's analysis of [                                                                                    ]. *See Final Results*, ECF No. 55 at 7-8, 19. Commerce stated that this analysis took in "[                                            ]

18

identified in the CBP Referral." *Id.* Commerce claimed that it was able to tie payment amounts to the U.S. sales as reported by New Continent. *Id.*, ECF No. 55 at 8, 19.

However, Commerce provided no more information on what this analysis entailed or how it was able to tie payments to New Continent's sales reporting. *See id.* at 7-8, 19-20. Instead, Commerce described its standard practice in comparing documentation during a verification and stated that it performed a "similar exercise" here that allowed it to "tie the individual payment amounts to the U.S. sales value reported by New Continent in its U.S. sales database…." *Id.*, ECF No. 55. At 19-20.

But, as New Continent itself stated, the payment documentation it submitted does not provide a "one-to-one link between the payment and the invoice." *New Continent Response*, R.C.R. 44/R.P.R. 42 at 21. Instead, New Continent provided only [                    ], which it claimed [

                              ]. *See id.*; *see also USW April 7 Comments*, R.C.R. 84 at 17 (discussing New Continent's submission). Commerce did not explain how it was able to tie individual payment amounts to specific invoices or sales when New Continent itself admitted that its documentation did not allow such a step. *See New Continent Response*, R.C.R. 44/R.P.R. 42 at 21 (stating the documents it submitted do not provide a "one-to-one link between the payment and the invoice.").

19

PUBLIC VERSION

Further, as Defendant-Intervenor specifically showed to Commerce, New Continent's [                                    ] could not even be tied [

  ] offered by New Continent. *See USW April 7 Comments*, R.C.R. 84 at 18-19. New Continent instead had to [                                                          ] in its calculations and without explanation or support [

                                     ]. *Id.* Defendant-Intervenor also showed to Commerce that the [                    ] where the[

           ] referenced [                       ], that [                    ] in fact contradicted New Continent's claims. In its decision memorandum, Commerce provided no explanation of why these repeated examples of inaccuracy and fallacy in New Continent's claims still did not prevent a reasonable reliance on New Continent's [                              ]. Nor did Commerce describe any steps it took to overcome these issues or remove them from its analysis. In short, Commerce failed to address contrary evidence and failed to describe the determination it did make.

Likewise, Defendant-Intervenor also pointed to record evidence that showed that the [                              ] Commerce also claimed to have analyzed and relied on as supporting New Continent's reporting in fact also contradicted New Continent's claims. Defendant-Intervenor called Commerce's attention to the fact that [                              ] as submitted [                          ] all showed that [                                    ]. *See id.*, R.C.R. 84 at 23-24. Those [                      ] also showed that [

]. *See USW Rebuttal Comments*,

R.C.R. 35 at 10-11. Those [                              ] therefore corresponded to [

] but not to New Continent's

[                              ] Commerce, which claimed that New Continent

[                                                              ].

*See id.*, R.C.R. 84 at 23-24. Again, Commerce did not address this issue, or explain

in any way how the [                      ] actually supported the decision

Commerce reached that New Continent's reporting to Commerce was accurate.

Commerce's failure to explain how it relied on these sources or why the

contrary information contained therein did not meaningfully detract from that

reliance is of fundamental concern here, as Commerce rests its determination of

New Continent's reporting accuracy on its analysis of these sources. Without those

sources, Commerce has only the [                          ] submitted by New

Continent to support its decision regarding New Continent's, invoices that record

evidence called into question repeatedly during the reopened review.

In its final results of redetermination, Commerce addressed [

] that had been submitted by New Continent [                              ]

and [                          ]. *Final Results*, ECF No. 55 at 18. Commerce

found that the "sales price and quantity of these [

] match identically," so Commerce accepted New Continent's claim that

New Continent was reproducing the documents from other records that Commerce

accepted as accurate. *Id.* Commerce reasoned that New Continent could not have

been expected to keep the actual documents following the closure of the original

review. *Id.* But Defendant-Intervenor had provided specific examples to Commerce

showing that while in some cases [                                              ]

(providing [

                                              ] that showed [

                          ]), in other cases [                              ]

submitted (providing copies of New Continent's [

                                                                      ]

New Continent's submissions). *USW April 7 Comments*, R.C.R. 84 at 11 and

Exhibits 1 and 2. Thus, the record showed that New Continent's claim to have only

[                                        ] to be false, so that Commerce's acceptance of

that claim was not supported by substantial evidence.

Moreover, Defendant-Intervenor also submitted specific examples of where

the [                                ] submitted by New Continent. Defendant-

Intervenor specifically pointed Commerce to [

                          ] that had ended up on the record. Those [

                    ], gave [                    ] for the same [                ]. *See id.*,

R.C.R. 84 at 7-8. Defendant-Intervenor also explained to Commerce how New

Continent's excuse [                                        ] was only an "offer" version was

rebutted by the evidence. *Id.*, R.C.R. 84 at 8-9. New Continent has also admitted

that other example of such [                                ] existed on the record. *See*

*id.*, R.C.R. 84 at 8.

In making its determination to accept New Continent's claims that the

[                              ] New Continent's reporting was reliable even if New

Continent had [                                              ] and the record showed

[                                                              ] that were

not explained. Commerce did not address how New Continent's ability to [

                              ] detracted from Commerce's acceptance of New

Continent's claim that it was [                                        ].

Commerce also failed explain whether or not it accepted New Continent's claim that

[

        ] were only due to the erroneous submission of "offer" invoices, so failed to

explain why [                              ] did not conflict with Commerce's

conclusion that New Continent did not change the pricing information [

      ].

        Commerce also did not address the evidence pointed to by Defendant-

Intervenor that showed that New Continent's claims that it was not [

                                        ] and only had

knowledge of [                                              ]

were false, including New Continent's own prior reporting [

                      ]. *See Final Results*, ECF No. 55 at 16-17; *cf. USW*

*April 7 Comments*, R.C.R. 84 at 21-22.

**b.    Commerce Failed to Explain Why the Issue of Fraud on CBP was Not Relevant or to Address Evidence of New Continent's Involvement in that Fraud**

Commerce instead dismissed this issue as irrelevant, arguing that the only question before it was the reliability of [                                    ]. *Final Results*, ECF No. 55 at 15. But as the record showed that New Continent [


], the question of whether New Continent [


] was entirely relevant into unraveling New Continent's practices. As already discussed, as Commerce failed to show why it could rely on [

                                ] not only failed to support New Continent's reporting and claims but [                                ], Commerce was left with only the support of [                        ] for Commerce's determination that New Continent's reporting had been accurate. But if New Continent [

                                        ]—as established by the [                                    ] and identically found [

    ] as well as New Continent's [

                                        ]—then the record showed that New Continent [                                        ].

Commerce could not reasonably rely on [                        ] New Continent as accurate without explaining why [                ] was not. Commerce did not do so.

Evidence of a willingness to commit some fraud calls into question the reliability of all other information submitted by that party. *See Shanxi Hairui Trade Co. v. United States*, No. 2021-2067, 2022 WL 2443960, at *4 (Fed. Cir. July 6, 2022) (misinformation about one issue "directly undermines the reliability of all information {a respondent} provided to commerce"); *Papierfabrik Aug. Koehler SE v. United States*, 843 F.3d 1373, 1379 (Fed. Cir. 2016) ("fraudulent responses as to part of submitted data may suffice to support a refusal by Commerce to rely on any of that data"); *Ad Hoc Shrimp Trade Action Comm. v. United States*, 992 F. Supp. 2d 1285, 1293 (Ct. Int'l Trade 2014), *aff'd*, 802 F.3d 1339 (Fed. Cir. 2015) ("…misrepresentation may reasonably be inferred to pervade the data in the record beyond that which Commerce has positively confirmed as misrepresented."). Commerce provided no explanation of how evidence on [

] failed to materially detract from Commerce's acceptance of other information from New Continent as reliable.

Thus, on multiple critical issues in the reopened review, Commerce unfortunately failed to take into account substantial evidence on the record that fairly detracted from the weight of the evidence Commerce chose to rely on. Commerce failed to respond to specific arguments supported by specific examples from the record offered by Defendant-Intervenor addressing matters at the heart of Commerce's decision, including the failure [

] offered by New Continent to support New Continent's claims. Instead, Commerce offered only summary statements that it had analyzed those sources and

PUBLIC VERSION

found the support it sought, thereby failing to explain its reasoning "with sufficient clarity to permit effective judicial review" of the path its decision making took. *Timken U.S. Corp.*, 421 F.3d at 1355 (internal quotation marks omitted).

Commerce repeatedly took New Continent's statements and claims "at face value despite record evidence potentially detracting from this conclusion" (*Bio-Lab,* 392 F. Supp. 3d at 1270); including New Continent's claims that it did not [

], that other [                                                    ], that

its [                                                    ], and that it [

]. By doing so, Commerce failed to fundamentally address the overriding issue of fraud that is evident throughout the record, leaving the determination that Commerce did make unsupported by substantial evidence and contrary to law. Therefore, Commerce's redetermination on remand must again be remanded to Commerce to fully consider all evidence and matters before it.

*     *     *     *

PUBLIC VERSION

## V.   <u>CONCLUSION</u>

For the reasons set out above, Defendant-Intervenor respectfully requests that this Court again remand Commerce's determination to the agency and direct it to reconsider its determination, properly taking into account all evidence on the record that materially bears on the issues before Commerce, and to fully explain its reconsidered determination.

Respectfully Submitted,
/s/ Nicholas J. Birch
Roger B. Schagrin
Nicholas J. Birch

SCHAGRIN ASSOCIATES
900 Seventh Street, N.W.
Suite 500
Washington, D.C.  20001
*Counsel for USW*

Dated: July 8, 2022.

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I, Nicholas J. Birch, hereby certify that these comments contain 6,587 words, according to the word count function of the word processing program used to prepare these comments, and therefore complies with the word limitations as set forth in this Court's Standard Chambers Procedure ¶ 2(B)(1).

/s/ Nicholas J. Birch
Roger B. Schagrin
Nicholas J. Birch
Schagrin Associates
*Counsel for USW*

July 8, 2022