**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| PIRELLI TYRE CO., LTD., PIRELLI TYRE S.P.A., AND PIRELLI TIRE LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | )  Court No. 20-00115 ) |
| and | ) ) |
| THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, | ) ) ) ) ) ) |
| Defendant-Intervenor | ) ) |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

<div style="margin-left:50%">

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. MCCARTHY
Director

</div>

OF COUNSEL:
Ayat Mujais
Attorney
U.S. Department of Commerce
Office of the Chief Counsel For Trade
  Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (202) 482-4750
Email:  ayat.mujais@trade.gov

September 27, 2022

SOSUN BAE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington DC 20044
Tel: (202) 305-7568
Fax: (202) 514-7965
Email: Sosun.Bae@usdoj.gov

Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

STATEMENT PURSUANT TO RULE 56.2 ...................................................... 2

I.    Administrative Determination Under Review ..................................... 2

II.    Issue Presented For Review ................................................................ 2

STATEMENT OF FACTS .............................................................................. 2

I.    Administrative Proceedings ............................................................... 2

II.    Proceedings Before This Court .......................................................... 4

SUMMARY OF THE ARGUMENT ............................................................. 5

ARGUMENT ................................................................................................. 6

I.    Standard Of Review ........................................................................... 6

II.    Commerce's Determination Not To Grant Pirelli A Separate Rate Is Supported By Substantial Evidence And In Accordance With Law ....................................................... 7

    A.    Legal Background ................................................................... 7

    B.    Pirelli's Structure ................................................................... 9

    C.    Commerce Did Not Commit Legal Error In Its Separate Rate Analysis ............... 9

        1.    Commerce's Analysis Of The De Facto Criteria Was Lawful ...................... 9

        2.    Pirelli Completely Mischaracterizes Commerce's Analysis Of The Minority Ownership Share Of Pirelli China .......................... 10

        3.    Pirelli Did Not Exhaust Its Argument Regarding Actual Control ............... 13

        4.    Pirelli's Argument Regarding Export Activities Is Misplaced ................... 15

    D.    Commerce's Determination That Pirelli China Failed To Rebut The Presumption Of Government Control Is Supported By Substantial Evidence ................................. 17

CONCLUSION .............................................................................................. 20

**TABLE OF AUTHORITIES**

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*,
  37 CIT 1085 (2013) ................................................................................................ 8, 9

*Advanced Tech. & Materials Co. v. United States*,
  37 CIT 1487 (2013), *aff'd*, 581 F. App'x 900 (Fed. Cir. 2014) ................................. 8

*Advanced Tech & Materials Co., Ltd. v. United States*,
  885 F. Supp. 2d 1343 (Ct. Int'l Trade 2012) ........................................................... 11

*Agro Dutch Indus. v. United States*,
  508 F.3d 1024 (Fed. Cir. 2007) ............................................................................... 14

*An Gang Fisheries Imp. & Exp. Joint Stock Co. v. United States*,
  284 F. Supp. 3d 1350 (Ct. Int'l Trade 2018) ........................................................... 12

*Aramide Maatschappij V.o.F. v. United States*,
  901 F. Supp. 353 (Ct. Int'l. Trade 1995) ................................................................. 14

*Boomerang Tube, LLC, TMK IP-SCO v. United States*,
  856 F.3d 908 (Fed. Cir. 2017) ................................................................................. 13

*Changzhou Hawd Flooring Co. v. United States*,
  848 F.3d 1006 (Fed. Cir. 2017) ................................................................................. 8

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
  467 U.S. 837 (1984) ................................................................................................... 7

*China Mfrs. All., LLC v. United States*,
  1 F.4th 1028 (Fed. Cir. 2021) .................................................................................... 5

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938) ................................................................................................... 6

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966) ................................................................................................... 7

*Corus Staal v. United States*,
  502 F.3d 1370 (Fed. Cir. 2007) ............................................................................... 14

*Diamond Sawblades Mfrs. Coal. v. United States*,
  866 F.3d 1304 (Fed. Cir. 2017) ................................................................................. 8

*Fujitsu Gen. Ltd. v. United States*,
   88 F.3d 1034 (Fed. Cir. 1996) ............................................................... 6

*Gerber Food (Yunnan) Co. v. United States*,
   601 F. Supp. 2d 1370 (Ct. Int'l Trade 2009) ...................................... 14

*Goldlink Indus. Co. v. United States*,
   431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ........................................ 7

*Guizhou Tyre Co., Ltd. v. United States*,
   557 F. Supp. 3d 1302 (Ct. Int'l Trade 2022) ................................. 16, 19

*Hontex Enters. Inc. v. United States*,
   248 F. Supp. 2d 1323 (Ct. Int'l Trade 2003) ...................................... 19

*Mittal Steel Point Lisas, Ltd. v. United States*,
   548 F.3d 1375 (Fed. Cir. 2008) ........................................................... 13

*Nippon Steel Corp. v. United States*,
   458 F.3d 1345 (Fed. Cir. 2006) ............................................................. 7

*Shandong Yongtai Grp. Co. v. United States*,
   487 F. Supp. 3d 1335 (Ct. Int'l Trade 2020) ...................................... 10

*Sigma Corp. v. United States*,
   117 F.3d 1401 (Fed. Cir. 1997) ......................................................... 7, 8

*Ta Chen Stainless Steel Pipe, Inc. v. United States*,
   298 F.3d 1330 (Fed. Cir. 2002) ........................................................... 13

*Timken Co. v. United States*,
   699 F. Supp. 300 (Ct. Int'l Trade 1988) .............................................. 7

*Torrington Co. v. United States*,
   68 F.3d 1347 (Fed. Cir. 1995) ............................................................... 7

*United States v. Eurodif S.A.*,
   555 U.S. 305 (2009) ................................................................................ 6

*United States v. L.A. Trucker Truck Lines, Inc.*,
   344 U.S. 33 (1952) ............................................................................... 14

*Yantai CMC Bearing Co. v. United States*,
   203 F. Supp. 3d 1317 (2017) .............................................................. 8, 9

*Zenith Elecs. Corp. v. United States*,
   988 F.2d 1573 (Fed. Cir. 1993) ................................................................. 13

*Zhejiang Quzhou Lianzhou Refrigerants Co. v. United States*,
   350 F. Supp. 3d 1308 (2018) ............................................................... 9, 10

**Statutes**

19 U.S.C. § 1677(18) ................................................................................. 7

19 U.S.C. § 1677f(i)(3) ............................................................................ 13

28 U.S.C. § 2637(d) ................................................................................. 13

**Other Authorities**

*Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*,
   80 Fed. Reg. 34,893 (Dep't of Commerce June 18, 2015) ........................... 2

*See Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
   83 Fed. Reg. 50,077 (Dep't of Commerce Oct. 4, 2018) ...................... 3, 11

*Certain Steel Wheels from the People's Republic of China*,
   83 Fed. Reg. 54,568 (Dep't of Commerce Oct. 30, 2018) ........................ 11

*Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*,
   84 Fed. Reg. 55,909 (Dep't of Commerce Oct. 18, 2019) ........................... 3

*Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China,*
   85 Fed. Reg. 22,396 (Dep't of Commerce Apr. 22, 2020) ...................... 2, 3

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| PIRELLI TYRE CO., LTD., PIRELLI TYRE S.P.A., AND PIRELLI TIRE LLC, | ) |
| Plaintiffs, | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant, | )   Court No. 20-00115 |
| and | ) |
| THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, | ) |
| Defendant-Intervenor | ) |

**<u>ORDER</u>**

Upon consideration of plaintiffs' motion for judgment on the agency record, defendant's and defendant-intervenor's responses thereto, plaintiffs' reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiffs' motion is DENIED; and it is further

ORDERED that the Department of Commerce determination at issue in this action is sustained; and it is further

ORDERED that judgment is entered in favor of the United States.


Dated:_____          _____
        New York, New York                              JUDGE

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| PIRELLI TYRE CO., LTD., PIRELLI TYRE S.P.A., AND PIRELLI TIRE LLC, ) | |
| Plaintiffs, ) | |
| v. ) | |
| UNITED STATES, ) | Court No. 20-00115 |
| Defendant, ) | ███████████ |
| and ) | |
| THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, ) | |
| Defendant-Intervenor ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment on the agency record filed by plaintiffs Pirelli Tyre Co. (Pirelli China), Ltd., Pirelli Tyre S.p.A., and Pirelli Tire LLC (collectively, Pirelli[1]).  *See* ECF No. 65.  Pirelli challenges a single aspect of the U.S. Department of Commerce's (Commerce) final results in the third antidumping duty administrative review covering certain passenger vehicle and light truck tires from China, namely, Commerce's determination that Pirelli China did not demonstrate eligibility for a

---

[1]  When necessary, we will refer to the Pirelli entities separately.

separate rate.  As demonstrated below, Commerce's final results are supported by substantial

evidence and are otherwise in accordance with law.  Therefore, we respectfully request that the

Court deny plaintiffs' motion and enter judgment for the United States.

## STATEMENT PURSUANT TO RULE 56.2

**I.    Administrative Determination Under Review**

Pirelli challenges one aspect of Commerce's final results in the third administrative

review covering certain passenger vehicle and light truck tires from China.  *See Certain*

*Passenger Vehicle and Light Truck Tires from the People's Republic of China,* 85 Fed. Reg.

22,396 (Dep't of Commerce Apr. 22, 2020) (final results) (P.R. 226),[2] and accompanying Issues

and Decision Memorandum (IDM) (P.R. 227).  The period of review is August 1, 2017, through

July 31, 2018.

**II.    Issue Presented For Review**

Whether Commerce's determination that Pirelli China failed to rebut the presumption of

*de facto* government control and was therefore ineligible for a separate rate is supported by

substantial evidence and in accordance with law.

## STATEMENT OF FACTS

**I.    Administrative Proceedings**

In 2015, Commerce issued an antidumping duty order covering certain passenger vehicle

and light truck tires from China.  *See Certain Passenger Vehicle and Light Truck Tires from the*

*People's Republic of China*, 80 Fed. Reg. 34,893 (Dep't of Commerce June 18, 2015).  On

October 4, 2018, Commerce initiated an administrative review of the order, covering 42

---

[2]  Citations to the public record (P.R.) and confidential record (C.R.) refer to the record of
the underlying administrative review.  Citations to the Pirelli's Motion for Judgment on the
Agency Record are referenced as "Pirelli Br."

companies, including Pirelli China.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 83 Fed. Reg. 50,077 (Dep't of Commerce Oct. 4, 2018).

Pursuant to the instructions in the initiation notice, Pirelli China submitted a separate rate application.  *See* Pirelli Separate Rate Application (Nov. 14, 2019) (Pirelli SRA) (P.R. 89) (C.R. 35).  On October 18, 2019, Commerce published its preliminary results.  *See Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*, 84 Fed. Reg. 55,909 (Oct. 18, 2019) (preliminary results and rescission, in part) (P.R. 194) and accompanying Issues and Decision Memorandum (PDM) (P.R. 195).  In the preliminary results, Commerce determined not to grant Pirelli China a separate rate because it had failed to demonstrate an absence of *de facto* and *de jure* government control.  PDM at 13 (citing Preliminary Separate Rate Memo (Oct. 10, 2019) (Prelim. SRA Memo) (C.R. 143)).  Accordingly, Commerce treated Pirelli China as part of the China-wide entity and subject to a dumping margin of 87.99 percent.  *Id.*  Subsequently, Pirelli submitted a case brief requesting that Commerce reverse its preliminary denial of its separate rate status.  *See* Pirelli Case Brief (Dec. 3, 2019) (P.R. 227).  Petitioner The United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (USW) submitted a rebuttal brief urging Commerce not to depart from its finding in the preliminary results.  *See* USW Rebuttal Brief at 9-14 (Dec. 9, 2019) (C.R. 146).

On April 15, 2020, Commerce published its final results.  *See* Final Results, 85 Fed. Reg. 22,396.  In the final results, Commerce continued to find that Pirelli China ineligible for a separate rate because it had not rebutted the presumption of *de facto* government control.  IDM at 13.  Specifically, Commerce continued to determine Pirelli China ineligible for a separate rate based on the *de facto* criterion regarding whether the respondent has autonomy from the

government in making decisions regarding the selection of management. *Id.* at 14. Commerce found that control over Pirelli China's selection of management exists through State-owned Assets Supervision and Administration Commission of the State Council (SASAC) China National Tire & Rubber Corporation, Ltd. (CNRC), which is ███████████████████ ███████████ . *Id.*; *see also* Final Separate Rate Status Memo at 2 (Final SRA Memo) (Apr. 15, 2020) (C.R. 160).

Commerce noted that Pirelli China was 36.9 percent owned by China Chem and the Silk Road Fund, both SASACs. IDM at 13-14. Because Pirelli China was minority-owned by state-owned entities, Commerce did not automatically determine the presence or absence of governmental control; rather, it considered whether the record contains additional indicia of control sufficient to demonstrate that the company lacked independence and should therefore not receive a separate rate. *Id.* at 15. Commerce found that the record demonstrated that Pirelli & C. S.p.A. was indirectly the majority shareholder of Pirelli China, that CNRC chose the majority of Pirelli's board members, and that the Pirelli entities share common board membership and management, with Ren Jianxin as both the chairman and president of China Chem and the chairman of Pirelli & C. S.p.A., which is indirectly the majority shareholder of Pirelli China. *Id.*; *see also* Final SRA Memo at 2 (C.R. 160); Prelim. SRA Memo at 2 (C.R. 143).

Commerce considered Pirelli's arguments that Pirelli China was not subject to control by the Chinese government, but found them either unsupported by the record or unconvincing. IDM at 15-17.

## II.   **Proceedings Before This Court**

On May 21, 2020, Pirelli appealed Commerce's final results to this Court. *See* Summons, ECF No. 1; Compl., ECF No. 6. On July 27, 2020, Pirelli filed an unopposed motion to stay this

action until a final decision by the Court of Appeals for the Federal Circuit in *China Manufacturers Alliance, LLC v. United States*, 1 F.4th 1028 (Fed. Cir. 2021).  *See* July 27, 2020 Stay Motion, ECF No. 23.  This Court granted the motion.  *See* Aug. 6, 2020 Order, ECF No. 25. In June 2021, the Federal Circuit issued its decision in *China Manufacturers*.  *See China Mfrs.*, 1 F.4th at 1028.

In July 2021, upon information received from U.S. Customs and Border Protection (CBP), we requested a voluntary remand so that Commerce could further examine certain issues raised by CBP.  *See* July 20, 2021 Voluntary Remand Motion, ECF No. 29.  This Court granted our request.  *See* Remand Order.  Remand proceedings ensued, and our response to remand comments was filed on September 26, 2022.

## SUMMARY OF THE ARGUMENT

Commerce's determination that Pirelli China failed to rebut the presumption of *de facto* government control, and was thus ineligible for a separate rate, is supported by substantial evidence and in accordance with law.

First, despite Pirelli's arguments to the contrary, Commerce's determination was entirely lawful, as Commerce properly determined, based on record evidence, that Pirelli China did not rebut the third *de facto* criterion, *i.e.*, independence from the government in selecting management.  Because Pirelli China was required to satisfy all four *de facto* criteria, Commerce reasonably ended its separate rate analysis once it determined that Pirelli China did not satisfy the third *de facto* criterion.  Commerce did *not* create an irrebuttable presumption or use a higher burden of proof than appropriate for minority ownership; rather, it applied the proper burden of proof for instances involving minority government interest by analyzing whether there were additional indicia of control sufficient to demonstrate that the company lacks independence and

therefore should receive the China-wide rate.  Finally, Pirelli's argument that Commerce must base a separate rate determination on actual, rather than potential, control, should not be heard because Pirelli failed to exhaust that issue at the administrative level.

Second, Commerce's determination was supported by substantial evidence.  Commerce relied on record evidence to determine that Pirelli China had failed to meet the third *de facto* criterion, including evidence indicating that China Chem, through Pirelli & C. S.p.A., could control Pirelli China and appoint its board members.  Specifically, Commerce found that a state-owned entity had chosen the majority of the board members, and that the chairman of China Chem was also the chairman of Pirelli & C. S.p.A., which ███████████████████████

███████████████████.  Commerce also considered, but reasonably found unconvincing, Pirelli's argument that chief executive officer (CEO) Marco Tronchetti Provera was completely independent of Pirelli & C. S.p.A. in selecting its management.  Finally, much of the evidence Pirelli seeks to use to rebut Commerce's findings is not on the record of this review.

## ARGUMENT

### I.    Standard Of Review

This Court sustains "'any determination, finding, or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'"  *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)); *see also United States v. Eurodif S.A.*, 555 U.S. 305, 316 n.6 (2009). "Substantial evidence" consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence," and the possibility of drawing two inconsistent conclusions from evidence upon the record does not render

6

Commerce's findings unsupported by substantial evidence.  *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Moreover, "the court may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citation and quotation marks omitted); *see also Timken Co. v. United States*, 699 F. Supp. 300, 306 (Ct. Int'l Trade 1988) (stating that it is "not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record").  Hence, a party challenging Commerce's determination under the substantial evidence standard "has chosen a course with a high barrier to reversal."  *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006).  The Court need not conclude that the agency's construction of the statute is the only permissible one, or even the reading the Court would have reached if the question initially had arisen in a judicial proceeding.  *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.11 (1984) (citations omitted); *Torrington Co. v. United States*, 68 F.3d 1347, 1351 (Fed. Cir. 1995) (recognizing Commerce as "master" of the antidumping laws).

## II.    Commerce's Determination Not To Grant Pirelli A Separate Rate Is Supported By Substantial Evidence And In Accordance With Law

### A.    Legal Background

Commerce has the statutory authority to determine if a country is a non-market economy pursuant to 19 U.S.C. § 1677(18).  *See* 19 U.S.C. § 1677(18); *see also Sigma Corp. v. United States*, 117 F.3d 1401, 1404–06 (Fed. Cir. 1997).  In proceedings involving a non-market economy, such as China, a rebuttable presumption exists that all companies within the country

are subject to government control and should be assigned a single, country-wide antidumping duty rate. *See Sigma Corp.*, 117 F.3d at 1405. An exporter will receive the country-wide rate by default, unless it demonstrates affirmatively that the exporter maintains both *de jure* and *de facto* independence from the government and deserves to receive separate rate status. *See id*. The burden of rebutting the presumption of government control rests with the exporter. *See id*. at 1405–06.

Of relevance here, the *de facto* criteria are: (1) whether the export prices are set by or are subject to the approval of a government authority; (2) whether the respondent has authority to negotiate and sign contracts and other agreements; (3) whether the respondent has autonomy from the government in making decisions regarding the selection of management; and (4) whether the respondent retains the proceeds of its export sales and makes independent decisions regarding disposition of profits or financing of losses. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 37 CIT 1085, 1090 n.21 (2013) (citation omitted).

The Court of Appeals for the Federal Circuit has sustained Commerce's application of the rebuttable presumption of government control for non-market economies. *See, e.g., Diamond Sawblades Mfrs. Coal. v. United States*, 866 F.3d 1304, 1311 (Fed. Cir. 2017); *Changzhou Hawd Flooring Co. v. United States*, 848 F.3d 1006, 1009 (Fed. Cir. 2017). All four factors of the *de facto* test must be satisfied to rebut the presumption of government control. *See Yantai CMC Bearing Co. v. United States*, 203 F. Supp. 3d 1317, 1326 (2017); *see also Advanced Tech. & Materials Co. v. United States*, 37 CIT 1487, 1493–94 (2013), *aff'd*, 581 F. App'x 900 (Fed. Cir. 2014) (per curiam) ("{E}ach of the *de facto* prongs must be satisfied for a company to get a separate rate."). The *de facto* test is therefore conjunctive, and Commerce is not required to consider all four criteria if it determines that the respondent does not meet one

of them.  *See Zhejiang Quzhou Lianzhou Refrigerants Co. v. United States*, 350 F. Supp. 3d

1308, 1321 (2018).

      **B.**    <u>**Pirelli's Structure**</u>

      Pirelli Tyre Co., or Pirelli China, is located in China and is the producer and exporter of

the subject merchandise.  Pirelli Tyre S.p.A is the ███████████████████████████████

█████████████████████████████, the indirect majority shareholder of

Pirelli China.  *See* IDM at 15.  Pirelli Tyre LLC is the United States importer.  The Pirelli entities

share common board membership and management.  *Id.*

      Pirelli China is 36.9 percent indirectly owned by China Chem and the Silk Road Fund,

which are two state-owned enterprises in China that are supervised by SASAC.  *Id.* at 14.  Pirelli

& C. S.p.A selects the majority of Pirelli China's board members.  *Id.* at 15.  China Chem is the

single largest indirect shareholder of Pirelli & C. S.p.A. and appointed the majority of Pirelli &

C. S.p.A.'s board.  *Id.* at 15-16.  During the period of review, Mr. Ren Jianxin was the Chairman

of the Board of Pirelli & C. S.p.A. and the Chairman and President of China Chem.  *Id.* at 15.

      **C.**    <u>**Commerce Did Not Commit Legal Error In Its Separate Rate Analysis**</u>

      **1.**    <u>**Commerce's Analysis Of The De Facto Criteria Was Lawful**</u>

      As explained above, there are four *de facto* criteria that a company must satisfy to rebut

the presumption of government control.  *See Ad Hoc Shrimp Trade Action Comm.* at 1090 n.21.

Companies must satisfy all four criteria, but Commerce does not necessarily need to analyze all

four factors because it can determine, based on the failure to meet any one factor, that an entity is

under *de facto* government control.  *See Yantai CMC Bearing Co.* at 1325-26 ("Yantai CMC

failed to meet the third factor of the test. Given that all four factors must be satisfied, Commerce

had no further obligation to continue with the analysis.").  Indeed, this Court determined in the

litigation stemming from the first administrative review of the same product that Commerce's determination that Pirelli China had failed to satisfy the third *de facto* factor was supported by substantial evidence and Commerce appropriately concluded its analysis after analyzing only the third factor. *See Shandong Yongtai Grp. Co. v. United States*, 487 F. Supp. 3d 1335, 1346 (Ct. Int'l Trade 2020).

Commerce determined that Pirelli China failed to sufficiently rebut the presumption by satisfying the third *de facto* criterion, *i.e.,* whether the respondent has autonomy from the government in making decisions regarding the selection of management. *See* IDM at 14. Once Commerce determined that Pirelli China did not satisfy this criterion, Commerce ended its separate rate analysis. *Id.* Such a determination was in accordance with law, as discussed above, because Pirelli China was required to satisfy *all* four *de facto* criteria to be eligible for a separate rate.[3]

### 2. Pirelli Completely Mischaracterizes Commerce's Analysis Of The Minority Ownership Share Of Pirelli China

Pirelli alleges, without basis, that Commerce "applied the separate rate test {for Pirelli} in {the} same manner it would for a majority-owned entity," even though Pirelli China is minority-owned by a state-controlled entity. Pirelli Br. at 15. This is simply untrue.

When a company is majority-owned by a state-controlled entity, this information alone may be sufficient to support a Commerce determination of control (absent a rebuttal of presumption). *See, e.g., Zhejiang Quzhou*, 350 F. Supp. 3d at 1323. But simply because a respondent is minority-owned by a state-controlled entity does not in and of itself conclusively indicate an absence of government control over a company in a non-market economy. *See* IDM

---

[3] Pirelli does not appear to directly ask the Court to hold that Commerce must discuss more than one *de facto* criterion, but implicitly invites it to do so, for instance by trying to dictate a requirement that Commerce explicitly discuss export activities.

at 15.  Therefore, when conducting a separate rate analysis for a company with less than a

majority ownership, Commerce considers whether the record contains additional indicia of

control sufficient to demonstrate that the company lacks independence and therefore should

receive the China-wide rate.  *See id.*  Commerce's practice is to examine whether the Chinese

government may also be able to exercise, or have the potential to exercise, control of a

company's general operations through minority government ownership under certain factual

scenarios.  *Id.* (citing *Certain Steel Wheels from the People's Republic of China*, 83 Fed. Reg.

54,568 (Dep't of Commerce Oct. 30, 2018) (preliminary results), and accompanying PDM)).

Here, rather than imposing a "high burden of proof" or conducting the separate rate

analysis in the same manner as for a majority-owned company, as Pirelli alleges, Commerce

acted in accordance with its stated practice, finding indicia of control and the ability to

potentially exercise control through minority ownership.  *See* IDM at 15.  The record shows that

Pirelli & C. S.p.A is the indirect majority shareholder of Pirelli China and selects its board

members; it further demonstrates that the Pirelli entities share common board membership and

managements.  *Id.* at 15 (citing Pirelli SRA at 24, Exhs. 9 and 16D (C.R. 35, 51-52, 57)).

Additionally, the record indicates that Chem China appointed the majority of Pirelli & C. S.p.A's

board and is the single largest indirect shareholder.  *See* IDM at 16; *see* also Pirelli SRA at Exhs.

5, 10A (C.R. 43, 53).  This indicates potential control by China Chem.  *See* IDM at 17; *Advanced

Tech & Materials Co., Ltd. v. United States*, 885 F. Supp. 2d 1343, 1358-59 (Ct. Int'l Trade

2012) ("Board members are properly presumed subject to government control, directly or

indirectly.").  Commerce also found that the record indicates that Chem China controls Pirelli

China through Pirelli & C. S.p.A.  IDM at 17.  The information relied on by Commerce certainly

qualifies as indicia of control, and the potential to exercise that control, in addition to the

████████ minority ownership.  Commerce acted in accordance with its practice, stated policy, and the law.

Pirelli claims that here, Commerce incorrectly applied the high burden of proof for *majority* government interest, instead of the lower burden of proof for minority government interest, because Commerce "found that the ability to nominate a subset of the board of directors . . . necessarily resulted in Chinese government control . . . despite numerous facts presented by Pirelli demonstrating that Commerce's theory was baseless."  Pirelli Br. at 15.  As demonstrated above, this is not the case; as stated in the final results, Commerce determined that, where there is minority government control, it would examine additional indicia of control, not merely rely on the existence of potential control.  *See* IDM at 15; *see also An Gang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 284 F. Supp. 3d 1350, 1359 (Ct. Int'l Trade 2018). Furthermore, Pirelli neglects to mention the various other record evidence that Commerce analyzed to determine whether there was government control, or that the "facts presented by Pirelli" were not on the record of this review.

Based on the record evidence, discussed in more length below, Commerce determined that there were additional indicia of control that, when combined with the existence of minority government control, indicated that Pirelli China did not satisfy the third *de facto* criteria and failed to sufficiently demonstrate that Chem China does not retain actual or potential control over Pirelli China.  Pirelli attempts to rebut this finding, as it did below; however, the record does not support the claim that Pirelli China and Pirelli & C. S.p.A. are not subject to the management and coordination of China Chem, or that the majority of Pirelli & C. S.p.A.'s board are independent directors, in part because the information on which Pirelli relies as evidence is not

12

on the record of this review.[4]  IDM at 15; *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298

F.3d 1330, 1336 (Fed. Cir. 2002) (it is the respondent's burden to create an accurate record);

*Zenith Elecs. Corp. v. United States*, 988 F.2d 1573, 1583 (Fed. Cir. 1993) ("The burden of

production {belongs} to the party in possession of the necessary information).

### 3. Pirelli Did Not Exhaust Its Argument Regarding Actual Control

Pirelli next argues, for the first time, that Commerce's separate rate determination for

Pirelli China is impermissibly based on the potential for control rather than evidence of actual

control.  *See* Pirelli Br. at 16.  Pirelli had every opportunity to raise this issue during the

administrative proceedings, particularly in its case brief, where it discussed at length the separate

rate issue; it elected not to do so.  Because Pirelli failed to exhaust this argument during the

administrative process, this Court should not consider it but rather deem it waived.

In *Boomerang Tube, LLC, TMK IP-SCO v. United States*, 856 F.3d 908, 912-13 (Fed.

Cir. 2017), the Federal Circuit confirmed that 28 U.S.C. § 2637(d) requires parties (except in

limited circumstances not relevant here) to exhaust administrative remedies prior to bringing an

action at the Court of International Trade.  *Accord* 19 U.S.C. § 1677f(i)(3) (stating that

Commerce's final determination must address "relevant arguments, made by interested parties");

*see also Mittal Steel Point Lisas, Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008)

(explaining that "'courts should not topple over administrative decisions unless the

administrative body not only has erred but has erred *against objection made at the time*

---

[4]  Pirelli argues that it need not be required to put documents of foreign law on the record for Commerce to consider.  Pirelli Br. at 45.  We disagree, but, should this Court agree with Pirelli, the proper recourse would be to remand for Commerce to consider the import of these materials in the first instance, lest this otherwise be converted into a *de novo* review rather than a review of the agency's proceedings.

*appropriate under its practice*.'") (quoting *United States v. L.A. Trucker Truck Lines, Inc.,* 344

U.S. 33, 37 (1952) (emphasis added in *Mittal Steel*)).

Courts have recognized limited exceptions to the exhaustion requirement, including

instances in which:  (1) the plaintiff raised a pure question of law that did not require further

agency involvement; (2) the plaintiff did not have timely access to the confidential record; (3) an

intervening judicial interpretation since the remand proceeding changed the agency result; and

(4) raising the argument at the administrative level would have been futile.  *See Corus Staal v.

United States*, 502 F.3d 1370, 1378-79 (Fed. Cir. 2007); *Gerber Food (Yunnan) Co. v. United

States*, 601 F. Supp. 2d 1370, 1377 (Ct. Int'l Trade 2009).  None of these exceptions remotely

apply here.

First, the futility exception is narrow, and has been applied primarily in situations where

parties "would be required to go through obviously useless motions in order to preserve their

rights."  *Corus Staal*, 502 F.3d at 1379 (quotation marks and citation omitted).  And the "mere

fact that an adverse decision may have been likely does not excuse a party from a statutory or

regulatory requirement that it exhaust administrative remedies."  *See id*.  Pirelli cannot

reasonably suggest that making these arguments would have been futile, particularly as the

likelihood of an adverse decision is insufficient excuse.  Indeed, Pirelli raised multiple arguments

during the underlying review regarding Commerce's separate rate determination, and certainly

had the ability to raise the potential versus actual control argument at that time.

Second, the issue clearly does not constitute a pure question of law.  Although this Court

has recognized the "pure question of law" exception to the exhaustion requirement in certain

antidumping cases, *see Agro Dutch Indus. v. United States*, 508 F.3d 1024, 1029 (Fed. Cir.

2007), the exception is generally inapplicable to this type of case.  *See Aramide Maatschappij*

*V.o.F. v. United States*, 901 F. Supp. 353, 357 n.4 (Ct. Int'l. Trade 1995) (explaining that "{t}he 'purely legal' exception is a weak one . . . .  Absent other factors indicating an exception should be made, the 'purely legal' argument should fail.").  Commerce's separate rate determination for Pirelli, including the issue of the level of control (or lack thereof) Pirelli must show, is a highly fact-intensive determination left to the agency's discretion.[5][6]

Turning to the remaining factors, no intervening judicial decision excuses Pirelli's failure to raise these challenges during the administrative proceeding, and Pirelli did not lack access to pertinent confidential record information below.  Thus, none of the exceptions to the exhaustion requirement apply, and this Court should not consider Pirelli's newly raised argument.

### 4.    Pirelli's Argument Regarding Export Activities Is Misplaced

Finally, Pirelli argues that Commerce failed to explicitly link its separate rate analysis to Pirelli China's export activity.  *See* Pirelli Br. at 19.  It is true that, if Commerce was analyzing the first *de facto* factor, or perhaps the fourth, Commerce would have to discuss how its separate rate determination is linked to Pirelli China's export activity and whether there is government control regarding that export activity.  However, as discussed above, Commerce only analyzed the third *de facto* factor, which concerns whether Pirelli China has autonomy in making decisions regarding the selection of management.  As discussed above, Commerce found that

---

[5] Pirelli may argue that the issue constitutes a pure question of law; if the Court finds Pirelli has satisfied this very narrowly-construed exception, Pirelli should still not prevail because its argument is not grounded in the record and relies on an overly expansive reading of pertinent case law, and Commerce has given reasons why it would be reasonable to infer government control over Pirelli China.  *See* IDM at 15-17; Final SRA Memo at 2-3 (C.R. 160).

[6] Pirelli also argues that Commerce has created an irrebuttable presumption regarding this issue.  If the Court does not deem the issue waived, it should still reject this argument because there is simply no basis for the notion that, just because Commerce did not determine Pirelli rebutted the presumption, that it was irrebuttable.

Pirelli China had failed to meet the third *de facto* criterion, and thus Commerce did not need to analyze whether Pirelli China's export activities are subject to government control.

To the extent Pirelli is claiming that Commerce was required to specifically discuss export activities in the context of third factor, this argument would make no sense, as the third factor simply concerns whether the respondent has shown it has autonomy from the government in making decisions regarding the selection of management.  Pirelli alleges that this Court has "consistently" ruled that Commerce must give meaning to the words "export activities" in its separate rate analysis, but the only case it cites in support of this proposition is *Guizhou Tyre Co., Ltd. v. United States*, 557 F. Supp. 3d 1302 (Ct. Int'l Trade 2022).  Pirelli's reliance on this case is misplaced for more than one reason.

First, *Guizhou Tyre* is non-final and non-binding; the Court remanded back to Commerce, and the case is currently in the midst of post-remand litigation.  *See Guizhou Tyre* docket, No. 19-00031 (Ct. Int'l Trade).  Second, the Court in *Guizhou* based its determination largely on its determination that Commerce had made an invalid finding of material fact.  *Guizhou Tyre*, 557 F. Supp. 3d at 1317-18.  Third, Commerce's determination in *Guizhou Tyre* appears to have been based in part on the fourth factor involving profit distribution, an issue tied more to "export activities" than the third factor.  *Id.* at 1319.  Fourth, the factual circumstances in *Guizhou Tyre* are not analogous, as 74.80 percent of the company at issue was owned by public shareholders, a situation not shared here.  *Id.*  Finally, as Commerce stated in its remand redetermination in *Guizhou Tyre*,

> {U}nder the presumption of government control (which has been upheld by the courts) Commerce does not affirmatively establish in each instance that the government is controlling the respondent's export activities, including pricing decisions.  Rather, it is the *burden of the respondent* to rebut the presumption by providing sufficient evidence to establish that it operates autonomously from

the government in certain key aspects (*i.e.*, those enumerated in the *de facto* criteria.

*Guizhou Tyre*, No. 19-00031, ECF No. 67 at 18 (Ct. Int'l Trade).

### D. Commerce's Determination That Pirelli China Failed To Rebut The Presumption Of Government Control Is Supported By Substantial Evidence

As discussed in some detail above, Commerce's determination that Pirelli China had failed to rebut the presumption of government control is based on substantial record evidence. Nothing in Pirelli's brief renders Commerce's determination unreasonable, particularly when viewed absent the non-record information Pirelli employs.

Pirelli argues that Pirelli China is a separate corporate entity from Pirelli & C. S.p.A. Pirelli Br. at 24-27.  We do not dispute that these entities are legally separate, nor do we claim (as Pirelli insinuates) that there is a majority government ownership in place.  But record evidence does show that there is a ▬▬▬▬ minority government ownership of Pirelli China by China Chem, and that through this minority ownership the Chinese government, via state-owned entities, can exercise control over Pirelli China's management selection.  *See* IDM at 14-15.  And, while true that Pirelli China and Pirelli & C. S.p.A. are separate legal entities, they share common board membership and management in Ren Jianxin, who is the chairman of both China Chem and Pirelli & C. S.p.A.[7]  *Id.* at 15.

In addition, Pirelli & C. S.p.A. is the indirect majority shareholder of Pirelli China. and selects most of its board members.  *Id.*  Specifically, as Commerce found, ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  Thus, the

---

[7]  In addition, Commerce found that a Pirelli ▬▬▬▬▬▬▬▬▬ and that ▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.  Final SRA Memo at 3 (C.R. 160).

mere fact that Pirelli China and Pirelli & C. S.p.A. are separate entities does not rebut the presumption of government control.  Further, notwithstanding Pirelli's claims that these two companies operate independently, the record shows that Pirelli & C. S.p.A. indirectly owns several shares of Pirelli China.  IDM at 17 (citing Pirelli SRA at 24, Exh. 16A (C.R. 35, 56)).

Pirelli attempts to downplay the significance of the board member appointments, stating that ████████████████████████████████████████████████████.  Pirelli Br. at 29.  But, without resort to extra-record evidence, Commerce has little context for what it would mean to be independent, and how that means the Chinese government has no control. The Italian Finance Code on which Pirelli relies in its attempt to rebut the presumption of government control on the grounds of board member independence is not on the record of this review, and thus Commerce did not find any evidence *on the record* to determine that the board of directors are independent from the Chinese government.  IDM at 16-17.

Pirelli also argues that Pirelli & C. S.p.A.'s Articles of Association ensure that CEO Marco Tronchetti Provera had exclusive day-to-day management authority, and that Pirelli & C. S.p.A. was not under management and coordination activities of its largest shareholders.  *See* Pirelli Br. at 32-42.  Pirelli further notes that the Italian Financial Code provides legal protection to prevent undue influence.  However, record evidence demonstrates that China Chem is the single largest indirect shareholder of Pirelli C. S.p.A., and that China Chem is only the party to directly or indirectly hold more than three percent of Pirelli & C. S.p.A.'s shares.  IDM at 16 (citing Pirelli SRA at Exh. 9 (C.R. 51-52).

Additionally, Pirelli Group's 2017 annual report states that: "Pirelli & C. S.p.A. is directly controlled by Marco Polo International Italy S.p.A….and is in turn therefore *indirectly controlled by China National Chemical Corporation*."  *Id.* (emphasis added).  Pirelli attempts to

explain away this language in its annual report by stating that Pirelli C. S.p.A. is required to include this language regarding control due to Italian Financial Code requirements.  Pirelli Br. at 40.  But, again, the Italian Financial Code is not on the record of this review, and the language of the annual report is clear regarding China Chem.  And, as stated above, the record shows that China Chem actually appointed the majority of Pirell & C. S.p.A.'s board; as a totality, the record indicates the likelihood of control by China Chem.  IDM at 16-17.

Commerce also found Pirelli's contention that Mr. Provera has exclusive authority to select management, and thus prevents board members from having influence, is misplaced.  *See* IDM at 17.  The record shows that Pirelli & C. S.p.A. is managed by a Board of Directors, to whom Mr. Provera directly reports and from whom he has delegated authority.  *Id.* (citing Pirellia SRA at Exh. 10B (C.R. 53)).  Commerce also found that Mr. Provera is charged with implementing the board's business plans and budget.  *Id.*  Thus, Commerce reasonably determined that Pirelli China had not sufficiently demonstrated Mr. Provera's exclusive authority to select management or prevent board members from influencing day-to-day operations.  *Id.* Commerce concluded, *based on the record*, that Pirelli China failed to demonstrate that China Chem does not retain actual or potential control throughout the Pirelli companies, and therefore did not rebut the presumption of *de facto* government control.  *Id.*

Finally, Pirelli argues that there is no evidence that the Chinese government exercised *de facto* control over Pirelli China's export activities.  *See* Pirelli Br. 46-49.  But the cases Pirelli relies on, *Hontex Enters. Inc. v. United States*, 248 F. Supp. 2d 1323 (Ct. Int'l Trade 2003), and *Guizhou Tyre*, are distinguishable or inapposite.  *Hontex*, for example, focuses primarily on the first *de facto* criterion, which directly implicates the ability to set export prices.  *Hontex*, 248 F. Supp. 2d at 1343.  And *Guizhou Tyre*, as discussed above, is inapplicable for multiple reasons.

Here, as already stated, Commerce focused on the third *de facto* criterion, which does not involve export activities, and it was not required to consider the criteria involving export activities.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny plaintiffs' motion for judgment on the agency record, sustain Commerce's final results in all respects, and enter judgment for the United States.

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td>BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney<br>General</td></tr>
<tr><td></td><td>PATRICIA M. MCCARTHY<br>Director</td></tr>
<tr><td>OF COUNSEL:<br>Ayat Mujais<br>Attorney<br>U.S. Department of Commerce<br>Office of the Chief Counsel For Trade<br>  Enforcement and Compliance<br>1401 Constitution Avenue, NW<br>Washington, D.C. 20230<br>Tel: (202) 482-4750<br>Email:  ayat.mujais@trade.gov</td><td>/s/Sosun Bae<br>SOSUN BAE<br>Senior Trial Counsel<br>U.S. Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>P.O. Box 480<br>Ben Franklin Station<br>Washington DC 20044<br>Tel: (202) 305-7568<br>Fax: (202) 514-7965<br>Email: Sosun.Bae@usdoj.gov</td></tr>
<tr><td>September 27, 2022</td><td>Attorneys for Defendant</td></tr>
</table>

20

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 5,891 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>s/Sosun Bae</u>
Sosun Bae

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of September, 2022, I electronically filed a copy of the foregoing using the CM/ECF system, which sent a notification of such filing to counsel of record.

<u>/s/ Sosun Bae</u>
Sosun Bae