**UNITED STATES COURT OF INTERNATIONAL TRADE**
**Before: The Honorable Judge Jennifer Choe-Groves**

_____

|  |  |
|---|---|
| PIRELLI TYRE CO., LTD., PIRELLI TYRE S.P.A. AND PIRELLI TIRE LLC, | ) ) ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| and | ) |
|  | ) |
| SHANDONG NEW CONTINENT TIRE CO., LTD | ) ) |
|  | ) |
| Plaintiff Intervenor | ) |
| v. | ) |
| UNITED STATES, | ) |
|  | ) |
| Defendant | ) |
| and | ) |
|  | ) |
| THE UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, | ) ) ) ) ) |
|  | ) |
| Defendant Intervenor. | ) |

**NONCONFIDENTIAL**

*Confidential information is contained in brackets on pages 15- 17 and 20-21.*

Court No. 20-00115

**PLAINTIFFS REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Daniel L. Porter
James P. Durling
James C. Beaty
Ana Amador

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, D.C., 2006

November 3, 2022

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF THE ARGUMENT ......................................... 1

ARGUMENT.......................................................................................................... 3

I.      COMMERCE'S METHOD OF ANALYZING PIRELLI TYRE'S
        SEPARATE RATE APPLICATION WAS UNLAWFUL...................................... 3

II.     COMMERCE'S DETERMINATION THAT PIRELLI TYRE FAILED TO
        REBUT THE PRESUMPTION OF GOVERNMENT CONTROL IS NOT
        SUPPORTED BY SUBSTANTIAL EVIDENCE ................................................. 11

        A.      Commerce's Finding That Pirelli Italy's Shareholding Structure
                Allowed Chinese Owned Companies to Control Pirelli Tyre's
                Operational Activities Is Not Supported by Substantial Evidence ............. 13

                1.      Commerce failed to appreciate the significance of the undisputed
                        facts that Pirelli Tyre, the applicant, was a separate corporate
                        entity from Pirelli Italy and that Chinese state-owned companies
                        did not have majority ownership of Pirelli Italy during the POR .... 13

                2.      There is abundant evidence in the record showing the majority of
                        members of Pirelli Italy's Board of Directors are independent
                        from the Chinese state-owned shareholders.................................... 15

        B.      Defendant's Conclusion That Chinese State-Owned Shareholders
                Exercised De Facto Operational Control Over Pirelli Tyre Ignores
                Substantial Evidence That Pirelli Italy's Day-To-Day Management
                Was Insulated From Chinese Shareholder's Control ................................. 18

                1.      Contrary to Commerce's conclusion, substantial evidence
                        demonstrates that Pirelli Italy's CEO, Tronchetti Provera, had
                        exclusive day-to-day management authority ................................... 19

                2.      Defendant does not address evidence in the record showing that
                        upon the relisting of Pirelli Italy, Chinese state-owned
                        shareholders ceased to have management and coordination
                        activity over Pirelli Italy................................................................ 21

        C.      The Arguments of Defendant and Defendant-Intervenor Concerning
                The Relevance of Italian Corporate Law Provisions Should Be
                Rejected ..................................................................................... 23

D.  Commerce's Conclusion That The Minority Chinese State-Owned Shareholder Could Influence Pirelli Tyre's *Export Activities* Is Unsupported by Substantial Evidence ......................................................... 25

CONCLUSION ............................................................................................................. 28

# TABLE OF AUTHORITIES

## 1.  Cases

*An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*,
284 F. Supp. 3d 1350 (Ct. Int'l Trade 2018) ............................................. 6, 7, 16

*Can Tho Import-Export Joint Stock Co. v. United States*,
415 F. Supp. 3d 1187 (Ct. Int'l Trade 2019) ..................................................... 15

*G &G Prods. LLC v. Rusic*,
902 F.3d 940 (9th Cir. 2018) ........................................................................... 26

*Guizhou Tyre v. United States*,
557 F. Supp. 3d 1302 (Ct. Int'l Trade 2022) .............................................. 7, 8, 9

*Luoyang Bearing Corp. v. United States*,
347 F.Supp.2d 1326 (Ct. Int'l Trade 2004) ...................................................... 11

*Nuove Industrie Elettriche di Legnano S.p.A. v. United States*,
739 F. Supp. 1567 (Ct. Int'l Trade 1990) ......................................................... 25

*Qingdao Sentury Tire Co. v. United States*,
577 F. Supp. 3d 1343 (Ct. Int'l Trade 2022). ................................................... 15

*Trust Chem Co. v. United States*,
791 F.Supp.2d 1257 (Ct. Int'l Trade 2011) ...................................................... 11

*Zhejiang Quzhou Lianzhou Refrigerants Co. v. United States*,
 350 F. Supp. 3d 1308 (Ct. Int'l Trade 2018 ....................................................... 4

## 2.   Rules

Rule 44.1 of Federal Rule of Civil Procedure ................................................... 25

Rule 44.1 of U.S. Court of International Trade Rules........................... 23, 24, 25

## 3.  Other authorities

Article 2497 Italian Civil Code ........................................................................ 22

Policy Bulletin 05.1, International Trade Administration .............................. 7, 26

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

In its opening brief Plaintiffs Pirelli Tyre Co., Pirelli Tire LLC, and Pirelli Tyre S.p.A., (referred collectively as "Pirelli Companies" or "Plaintiffs") presented detailed arguments as to how and why Commerce's decision to deny separate rate status to Pirelli Tyre Co., ("Pirelli Tyre") was both not in accordance with law and supported by substantial evidence.  The response briefs of Defendant and Defendant-Intervenors purport to address these detail arguments; but their efforts fail.

Neither Defendant nor Defendant-Intervenor adequately rebut Plaintiffs argument that Commerce's underlying AD review determination was not in accordance with law because Commerce failed to properly apply the applicable legal criteria for analyzing separate rate eligibility with regard to Pirelli Tyre.  Broadly, both Defendant and Defendant-Intervenor fail to understand or simply ignore directly relevant past precedent of the Trade Court that Commerce's analysis had to reflect the very important factual distinction between those scenarios in which Chinese Government controlled companies had a majority interest in the respondent, and those scenarios (like here) in which Chinese Government controlled companies only maintained a minority interest.

Likewise, both Defendant and Defendant-Intervenor fail to understand or simply ignore directly relevant past precedent of the Trade Court that, although Commerce may employ a "beholden theory" (*i.e.* by virtue of being an employee of a governmental entity the employee will exert control at the behest of the government), the theory must be linked to specific evidence in the record demonstrating a direct line between the government of China and an individual working at the applicant company with the ability

to hire and fire the management.  Both Defendant and Defendant-Intervenor ignore this

relevant precedent because there is no evidence of such a link for Pirelli Tyre.

      In addition, both Defendant and Defendant-Intervenor fail to rebut Plaintiffs' very

strong arguments that Commerce's ultimate conclusion that the Chinese government

exercised *de facto* control over Pirelli Tyre's day-to-day operations is not true nor

grounded upon any actual evidence in the record.  Indeed, neither Defendant nor

Defendant-Intervenor really attempt to dispute any of the multiple facts set forth in the

opening brief of Plaintiffs, but rather instead argue that these facts are not relevant to

Commerce's separate rate analysis.  But here again, Defendant and Defendant-Intervenor

fundamentally misread this Court's prior decisions on these issues.

**ARGUMENT**

**I.    COMMERCE'S METHOD OF ANALYZING PIRELLI TYRE'S SEPARATE RATE APPLICATION WAS UNLAWFUL**

In Section I of its opening brief Plaintiffs, Pirelli Companies demonstrated how this Court can find that Commerce's conclusion regarding Pirelli Tyre's eligibility for a separate rate is "otherwise unlawful" even before addressing the record evidence, because Commerce failed to properly apply the applicable legal criteria for analyzing separate rate eligibility with regard to Pirelli Tyre.  Plaintiffs Pirelli Companies opening brief set forth *three* demonstrations of why Commerce's analysis was unlawful.

*First*, Plaintiffs Pirelli Companies demonstrated that Commerce failed to adhere to multiple past precedent of the Trade Court that Commerce's analysis of the ability to rebut the presumption of government control had to reflect the very important factual distinction between those scenarios in which Chinese Government-controlled companies had a majority interest in the respondent, and those scenarios (like here) in which Chinese Government controlled companies only maintained a minority interest.  Pl. Br. 14-15, ECF 64.  The clear import of these past court precedents is that minority ownership by a government-controlled entity, as is the case here, requires a lower burden of proof by the respondent to rebut the presumption of Chinese government control.

Defendant-Intervenor and Defendant adopted different responses to this argument. Defendant-Intervenor attempts to argue that, in fact, the past court precedent does not require that Commerce adopt a lower burden of proof when analyzing a respondent in which Chinese government companies only maintain a minority interest.  Def-Int. Br. 10-

17, ECF 71.  This Defendant-Intervenor response argument is just wrong, as it is

contrary to the precedent of the Trade Court.

For example, in *Zhejiang Quzhou,* the Trade Court set forth a direct example of

the lower burden of proof placed on respondents who only have a minority state-

controlled owner stating that:

> Evidence of legal separation between an exporter subject to the nonmarket
> economy presumption of government control and its parent company (and its
> parent's state-owned parent company)…may rebut the presumption of de facto
> control over management selection when the government holds a minority stake.

*Zhejiang Quzhou Lianzhou Refrigerants Co. v. United States*, 350 F. Supp. 3d 1308, 1318

(Ct. Int'l Trade 2018) (emphasis added).  The Trade Court's *Zhejiang Quzhou* decision

very much highlighted the distinction between majority-owned and minority-owned vis-

à-vis the burden of respondent to rebut the presumption.  Defendant-Intervenors'

discussion of other past court precedent similarly fails to present the true conclusions of

the Trade Court.

For its part, in its response brief, Defendant does not deny that the distinction

between majority-owned and minority-owned is important for Commerce's analysis.

Def-Int. Br. 12-13, ECF 74.  However, Defendant's response then just baldly asserts a

conclusion that Commerce's analysis in the underlying AD review determination

recognized such distinction.  *Id*.  But mere recognition of the factual distinction is not the

same as complying with the Trade Court's past precedent of actually applying a lower

burden of proof.  Indeed, simply by comparing Commerce's rationale for its AD review

determination for Pirelli Tyre for the POR1 time period, (reflecting a time period in

which China National Chemical Corporation ("Chem China") a had a majority interest in Pirelli Tyre S.p.A. ("Pirelli Italy"), with Commerce's rationale for its AD review determination for Pirelli Tyre for the POR3 time period (reflecting a time period in which Chem China only had a minority and indirect interest in Pirelli Tyre through Pirelli Italy), this Court can see that Commerce effectively applied the same approach to its separate rate analysis and adopted the same rationale for its conclusion denying Pirelli Trye separate rate status.

_Second_, in its opening brief, Plaintiff Pirelli Companies also demonstrated that Commerce's AD review was unlawful because Commerce had applied a "control theory" that was contrary to past precedent of the Trade Court.  Pl. Br. 16-19.  Specifically, Plaintiffs' opening brief demonstrated that the Trade Court has ruled that, although Commerce may employ a "beholden theory" (_i.e._ by virtue of being an employee of a governmental entity the employee will exert control at the behest of the government), the theory must be linked to specific evidence in the record demonstrating a direct line between the government of China and an individual working at the applicant company with the ability to hire and fire the management.  As noted in Plaintiffs Pirelli Companies' opening brief, _vis-à-vis_ its analysis of Pirelli Tyre, Commerce did not comply with this Trade Court precedent.

Defendant's Response Brief made no real attempt to address this argument on the merits.  Def. Br. 14-15.

For its part, Defendant-Intervenor also does not directly address Plaintiffs' argument.  Yet, Defendant-Intervenor does make an attempt to address the Trade Court's

past precedent on the evidence needed to demonstrated control, and in particular the
Trade Court's decision in *An Giang Fisheries Imp. & Exp. Joint Stock Co. v. United
States*, 284 F. Supp. 3d 1350, 1354 (Ct. Int'l Trade 2018).  That said, Defendant-
Intervenor's discussion of this past court precedent does not draw the correct conclusions
from it.

Specifically, Defendant-Intervenor claims that, in *An Giang Fisheries,* the Trade
Court agreed that, because of the minority government shareholder's ability to appoint
the General Director, there was evidence of control.  Def.-Int. Br. 15.  However, this
conclusion actually supports the position of Plaintiffs Pirelli Companies.  In *An Giang
Fisheries*, Commerce's ultimate remand was upheld because Commerce was able to
show a direct link between individuals responsible for running the company at the
respondent-specific level.  *An Giang II*, 284 F. Supp. 3d at 1363-1364.  And indeed,
Trade Court's prior decision remanding the case makes the legal element of this even
more clear.  In that decision the Trade Court stated:

> If Commerce relied solely upon the government's potential to nominate a manager
> or a board member with control over day-to-day company operations, it would be
> deviating from its practice of requiring that the government either actually appoint
> management or be directly or indirectly involved in the management of the
> company."

*An Giang*, 203 F. Supp. 3d at 1292.  And so, a proper reading of the *An Giang* decisions
actually supports the position of Plaintiffs Pirelli Companies.

*Third*, the opening brief of Plaintiffs Pirelli Companies demonstrated that
Commerce's AD review determination was not in accordance with law because
Commerce failed to adhere to past Trade Court precedent that, in applying its separate

rate analysis, Commerce was required to give meaning to the words "export activities." Pl. Br. 19-22.  Indeed, Plaintiffs' opening brief noted a recent Trade Court decision in which the Trade Court had faulted Commerce for failing to link its separate rate analysis to the underlying export activities of the applicant.  *See* Pl. Br. 20. citing *Guizhou Tyre v. United States*, 557 F. Supp. 3d 1302, 1326 (Ct. Int'l Trade 2022).

In its response brief Defendant argues that, in its view, Commerce is not required to explicitly establish a link between a company's export activities and its analysis of the four *de facto* factors.  Def. Br. 15.  Defendant argues that Commerce is only obligated to consider the impact of the factual elements of the record on export activities if the specific factor implicates those factors.  Defendant further asserts that only the first and fourth *de facto* criteria implicate export activities and that because Commerce based its finding on the third *de facto* criteria "Commerce did not need to analyze whether Pirelli Tyre's export activities are subject to government control."  Def. Br. 15-16.

However, this Defendant position is completely inconsistent with the structure of Policy Bulletin 05.1 and the jurisprudence of *Guizhou Trye Co. v. United States.*

We start with Commerce's Policy Bulletin 05.1.  Policy Bulletin 05.1 states that the purpose of the test is "{t}o establish whether a firm is sufficiently independent from governmental control in its <u>export activities</u> to be eligible for a separate rate."  Policy Bulletin 05.1 at 2 (emphasis supplied).  The bulletin then lists three *de jure* factors and four *de facto* factors, all of which are ostensibly designed to enlighten the query at the top of the page.  *Id.*  There is no basis in how Commerce presents the test in its own bulletin to divorce the focus on export activities from the balance of the analysis.  Such an

analytical process would also be illogical as the entire premise of the separate-rate test is
to discern whether export pricing is distorted.

Despite Defendant's efforts to distinguish the case, this is exactly the dynamic that
Judge Stanceu highlighted in the *Guizhou Tyre* decision.  Specifically, in that case the
Trade Court found that Commerce's "reasoning is flawed, being vague and ambiguous as
to whether its inquiry is focused on government control of export activities."  *Guizhou
Tyre Co. v. United States*, 557 F. Supp. 3d 1302, 1318 (Ct. Int'l Trade 2022) (emphasis
supplied).  Judge Stanceu's opinion was not limited to the Court's "determination that
Commerce had made an invalid finding of material fact."  Def. Br. 16.  It is clear from
the opinion that Judge Stanceu found a legal flaw in Commerce's analysis that is also
evident in the method of review in this appeal.

Defendant's suggestion that the *Guizhou Tyre* opinion was limited to specific
factors which directly invoke exports activities and were not considered here is also
flawed.  Def. Br. 16.  In *Guizhou Tyre*, the court found that,

> the separate rate analysis Commerce applied to {the respondent} failed to
> show a factual relationship between the findings it made as to selection of
> board members and distribution of profits and the purpose it identified for
> applying its de facto separate rate criteria in the preliminary phase, which
> was to determine whether the government of the PRC exercised control of
> {the respondent's} "export activities" or "export functions."

*Guizhou Tyre*, 557 F. Supp 3d at 1319.

This excerpt shows two important things.  First, it shows that Judge Stanceu's
opinion was not limited to a consideration of profit distribution but also considered
corporate control, which is at issue here.  Second, and most importantly, Judge Stanceu

did in fact rule that Commerce's consideration of corporate control did require a link to "export activities."

This issue is also related to the arguments that have been made surrounding control.  If there is no link between authority over the selection of management and exports of subject merchandise then there is no link to export activities.  And indeed, that is the very premise underlying the decisions in *An Giang Fisheries v. United States*.

Implicitly recognizing that it does not have an effective response, Defendant attempts to make a procedural argument that this Court should not even consider this legal argument on the basis that Plaintiffs Pirelli Companies failed to exhaust its administrative remedies in this regard.  Def. Br. 13.  This Court must reject this procedural argument because there is little question that all of the issues associated with Commerce's analysis of the link between the source of Commerce's control finding and Pirelli Tyre's actual functioning were directly raised below.

Indeed, in direct response to Commerce's three paragraph preliminary separate rate determination[1], Pirelli Tyre submitted an administrative case brief with eighteen pages devoted to the reasons why the structure underlying the <u>day-to-day</u> (i.e. actual and not theoretical) management of the entity applying for the separate rate insulated it from Chinese shareholder control.  Admin. Case Brief at 32-49 (Public Record ("P.R.") 210)[2].

---

[1]  Preliminary Separate Rate Memorandum at 2-3 (P.R. 201) (stating without particularity that it was denying Pirelli Tyre's separate rate "Because the *de facto* and *de jure* control over Pirelli's selection of management exists through SASAC entity CNRC and the fact that various Pirelli board member.").

[2] No citations are made to the administrative record of the remand proceeding (ECF No. 57).

Moreover, it was only in the Decision Memorandum accompanying the Final Results that Commerce actually revealed the full legal basis for its finding. There it explained that is was actually relying on a *de facto* finding under prong three of its analytical framework. Final IDM at 14 ("{w}e preliminary denied Pirelli Tyre a separate rate based on the de facto criterion (3)") (P.R. 226). It also revealed that it found the legal controls evident in Chinese and Italian law ineffective with regarding to insulating independent directors from undue influence. Final IDM at 15 (P.R. 226). Most damningly to this theory, Commerce also stated that "we find that Pirelli has not demonstrated on this record that Chem China no longer retains <u>actual or potential</u> control and influence throughout the Pirelli companies' ownership structure." Final IDM at 17 (P.R. 226) (emphasis supplied). Clearly Commerce considered that Plaintiffs had made the arguments.

The exhaustion doctrine is designed to ensure that "Commerce was put on notice of the issue, not whether Plaintiff's exact wording below is used in the subsequent litigation." *Trust Chem Co. v. United States*, 791 F. Supp. 2d 1257, 1268 n.27 (Ct. Int'l Trade 2011); *see also Luoyang Bearing Corp. v. United States*, 347 F.Supp.2d 1326, 1352 (Ct. Int'l Trade 2004) ("plaintiff's brief statement of the argument is sufficient if it alerts the agency to the argument with reasonable clarity and avails the agency with an opportunity to address it."). The Court has found that elements of the exhaustion doctrine apply to the administrative agency as well stating that "{a}n administrative decision not to address the issue cannot be dispositive of the question whether or not the issue was properly brought to the agency's attention." *Luoyang Bearing*, 347 F. Supp. 2d at 1352-

1353.  It was only in the Decision Memorandum that as a result, exhaustion is not

appropriate here where Commerce did not reveal the full basis for its decision until after

the time for briefing has passed and appears to have specifically considered the issue it

alleges Plaintiffs failed to exhaust in the Decision Memorandum.

In sum, to the extent that Plaintiffs Pirelli Companies has identified legal flaws in

the explanation offered in the Final Results it is appropriate for this Court to consider

them at this juncture.  Defendant's arguments to the contrary are meritless.

## II.    COMMERCE'S DETERMINATION THAT PIRELLI TYRE FAILED TO REBUT THE PRESUMPTION OF GOVERNMENT CONTROL IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

In Section II of Plaintiffs Pirelli Companies opening brief, we explained in great

detail why Commerce's conclusion that the Chinese government controls Pirelli Tyre's

export activities is not true and, therefore, cannot be supported by substantial evidence.

*See* Pl. Br. 23-49.  We demonstrated that Commerce's conclusion that the Chinese

government exercised *de facto* control over Pirelli Tyre's day-to-day operations is not

true nor grounded upon any actual evidence in the record.  The record evidence on this

point leads to the exact opposite conclusion and Commerce's failure to address contrary

evidence means its determination cannot be supported by substantial evidence.  In doing

so, we demonstrated that the underlying evidentiary record from POR3 is very different

from the POR1 evidentiary record and therefore this Court should find that Commerce's

POR3 AD review determination is not supported by substantial evidence,

notwithstanding this Court's earlier conclusions *vis-à-vis* Commerce's POR1 AD review

determination.  The records are distinct and require separate analysis. Pl. Br. 26-28; 32-33.

In particular, the opening brief of Plaintiffs Pirelli Companies demonstrated that the very different evidentiary record for the POR3 AD review proved as follows:

- Pirelli Tyre, the separate rate applicant, was a separate corporate entity from Pirelli Italy;

- The shareholders supervised by State-owned Assets Supervision and Administration Commission of the State ("SASAC")  only had minority indirect ownership of Pirelli Italy during most of POR3;

- The majority of the Board of Directors of Pirelli Italy were <u>independent</u> directors who had special legal obligations under Italian law

- Pirelli Italy's CEO, Mr. Marco Tronchetti Provera ("Tronchetti Provera"), had exclusive day-to-day management authority;

- Upon the relisting of Pirelli Italy (which occurred in October 2017), Chinese state-owned shareholders ceased to have management and coordination activity over Pirelli Italy;

- According to Italian law, as a publicly listed company, Pirelli Italy has to adopt and implement procedures to guarantee fairness of any transaction with the largest shareholders. Moreover, Pirelli Italy is not under management and coordination activities of its largest shareholders, so the management is free to act according to the Pirelli Italy strategies. Lastly, Pirelli Italy has to maintain an equal treatment with all the shareholders also referring to the information granted.

- The legal protections in Italian corporate law (such as related parties transaction regulation or market abuse regulation)  prevent the very type of undue influence that Commerce has inferred.

- There is no evidence whatsoever that the Chinese Government exercised *de facto* control over Pirelli Tyre's <u>export activities</u>; in fact, all the record evidence demonstrates the contrary.

Pl. Br. 24.

Taken together, the opening brief argued, these facts demonstrate that Commerce's determination that Pirelli Tyre failed to rebut the presumption of government control is not supported by substantial evidence.

As we demonstrate below, the attempts by the response briefs of Defendant and Defendant-Intervenor to have this Court ignore the above key evidentiary facts are unavailing.

    **A.**    **Commerce's Finding That Pirelli Italy's Shareholding Structure Allowed Chinese Owned Companies to Control Pirelli Tyre's Operational Activities Is Not Supported by Substantial Evidence**

        **1.**    **Commerce failed to appreciate the significance of the undisputed facts that Pirelli Tyre, the applicant, was a separate corporate entity from Pirelli Italy and that Chinese state-owned companies did not have majority ownership of Pirelli Italy during the POR**

In the Section above, we demonstrates the <u>legal significance</u> of Commerce's failure to recognize in its analysis the fact that, during the POR3 time period, Pirelli Trye was not majority-owned by Chinese Government companies. Indeed, in the section above, we demonstrate that such Commerce failure makes Commerce's determination "otherwise not in accordance with law."

In this section we address the same key fact, but from a <u>substantial evidence</u> framework. Broadly, both Defendant and Defendant-Intervenor preferred not to address the important differences Pirelli Italy's ownership situation between the POR1 time period (majority ownership) and the POR3 time period (minority ownership). Indeed, it is telling that Defendant-Intervenor highlights this Court's first decision addressing the POR1 time period, but fails to acknowledge this Court's second decision in which this

Court affirmed Commerce's own conclusion that Pirelli Companies had successfully

rebutted the presumption of government-control when there was only minority

shareholding by Chinese Government-owned shareholders.

> Commerce found no information on the record to indicate that the Government of China's <u>minority shareholding in Pirelli Italy</u> or its ability to appoint a small number of Pirelli Italy's board members enabled any Chinese government entity to control Pirelli Tyre Co. directly or indirectly during the period from August 11, 2015 through October 19, 2015.

*Qingdao Sentury Tire Co. v. United States*, 577 F. Supp. 3d 1343, 1348 (Ct. Int'l Trade

2022).

Both Defendant and Defendant-Intervenor attempt to draw the Court's attention to

"additional indicia" showing potential control.  According to Defendant, one of these

additional indicia is that Chem China is the single largest indirect minority shareholder of

Pirelli Italy, and that this would *presumably* amount to indirect control over Pirelli Tyre.

Def. Br. 4.  But such argument flies in the face of Commerce's own conclusion as

affirmed by this court that being a largest minority shareholder is insufficient to assert *de*

*facto* control.  *Id.* at 1348; *see also Can Tho Import-Export Joint Stock Co. v. United*

*States*, 415 F. Supp. 3d 1187, 1193 (Ct. Int'l Trade 2019) (remanding Commerce's

determination because nothing in the record supported Commerce's view that the

minority government shareholder could circumvent the restrictions and limitations

imposed by the Articles of Association of Pirelli Italy.)

Defendant further argues that "Pirelli entities share common board membership

and managements."  Def. Br. 11. (citing Pirelli SRA (Confidential Record ("C.R.") 35).

However, <u>this categorical assertion is factually incorrect</u>.  Pirelli Italy and Pirelli Tyre do

not share managers or board members.  Rather, the evidentiary record only demonstrates that [

                              ].  Final SRA Memo at 3 (C.R.160).  Contrary to the impression

conveyed by Defendant's Response Brief, in fact, in its underlying determination,

Commerce never even attempted to find the requisite link between the individual

employed by an entity controlled by the government and the ability to hire and fire the

management of the applicant, which was actually a third company (Pirelli Tyre). *An

Giang Fisheries Imp. & Exp. Joint Stock Co. v. United States*, 284 F. Supp. 3d 1350,

1364 (Ct. Int'l Trade 2018); Pl. Br. 42.

> **2.  There is abundant evidence in the record showing the majority of members of Pirelli Italy's Board of Directors are independent from the Chinese state-owned shareholders**

In their opening brief, Plaintiffs Pirelli Companies identify those facts in the

evidentiary record demonstrating that the majority of Pirelli Italy's Board of Directors are

actually independent from the Chinese state-owned shareholders.  Pl. Br. 28-31.  In their

response briefs both Defendant and Defendant-Intervenor attempt to argue that such fact

is less relevant.  As we demonstrate below, their attempts utterly fail.

Defendant first argues that Chem China selects *most* of Pirelli Italy board

members and that there is no evidence in the record showing that the majority of Pirelli

Italy board are independent directors.  Def. Br. 12-13.  Defendant argument is both

misleading and contrary to the evidentiary record.  SASAC-controlled entities do not

select "most" or almost all of Pirelli Italy board members. Indeed, China National Tire &

NONCONFIDENTIAL

Rubber Corporation ("CNRC")[3] participates in the selection of [            ] members of

the board of which [                              ].  Pirelli's SRA at Ex. 10, 2017 Shareholder

Agreement, (Section 4.2.2) (P.R. 93).  [



            ].  *Id*.  Tronchetti Provera designates other 4 directors of which 1

must be independent. Finally. Pirelli's Italy's First Shareholder Meeting designates 1

independent director.  *Id*. Thus, the majority of Pirelli Italy board of directors [

    ] were independent.  *Id.*  Try as they might, Defendant and Defendant-Intervenor are

not able to dispute this key fact.

    And so, both Defendant and Defendant-Intervenor instead attempt engage in

misdirection; arguing that that there is no evidence in the record as to what "independent"

means.  Def. Br. 18; Def.-Int. Br. 18.  Such argument fails on its own.  Plaintiffs Pirelli

Companies are perfectly fine with this Court adopting the dictionary definition of

"independent."  The very definition of the word "independent" means "not influenced or

controlled in any way by other people, events, or things."[4]

    Moreover, neither Defendant nor Defendant-Intervenor address evidence in the

record demonstrating that prior to re-listing in Borsa Italiana, Pirelli Italy altered the

composition of the board to include a majority of independent directors.  *See* Pirelli SRA

---

[3] [                                                                    ]
[4] *See* Cambridge definition of word "independent",
https://dictionary.cambridge.org/us/dictionary/english/independent

at Exhibit 16D (C.R. 57).  Defendant and Defendant-Intervenor are not able, and in fact,

do not point to any evidence in the record showing that independent directors held any

position or had any familiar or personal relationship with SASAC-controlled entities.

Rather, the evidentiary record shows the majority of directors were independent in

conformity with international best international business practices.

And importantly, the new composition of Pirelli Tyre's Board of Directors since

August 31, 2017 that was formed for the IPO (dating October 4, 2017) contrasts with the

prior one where [                                                        ], or with an scenario where

[

                                                                                                    ].  *See* Pirelli SRA

at Ex. 8, 2015 Sales Purchase Agreement at section 3.2.2. at p. 19 (target de-listed) and

section 3.3.2 at p. 20 (target not de-listed) (C.R.44).  Moreover, the evidentiary record

demonstrates further that the independent directors have a significant role in internal

committees, some of which are exclusively composed of independent directors.  Pirelli

SRA at Ex. 10, Tab A, 2017 Shareholders Agreement (Section 4.1.) (P.R. 93). *See also*

Ex. 11 (P.R. 93).  Given these new facts for the POR3 time period, Defendant and

Defendant-Intervenor are simply wrong to attempt to convey the impression that the

situation is the same as under POR1 following Chem China investment, when SASAC-

controlled entities appointments did not have to be independent. Def.-Int. Br. 19.

In short, the response briefs of Defendant and Defendant-Intervenor ignore

considerable evidence in the record demonstrating that the majority of Pirelli Italy's

directors were independent, and that their role in the board as well as in independent

committees prevented SASAC-controlled entities having any control over day-to-day business activities.

**B.    Defendant's Conclusion That Chinese State-Owned Shareholders Exercised De Facto Operational Control Over Pirelli Tyre Ignores Substantial Evidence That Pirelli Italy's Day-To-Day Management Was Insulated From Chinese Shareholder's Control**

In their opening brief, Plaintiff Pirelli Companies demonstrated that Pirelli Italy, the indirect majority parent company of Pirelli Tyre, is based in Italy and is publicly listed on the Milan Stock Exchange.  Pl. Br. 37-38.  Accordingly, as noted by the opening brief, Commerce's ultimate decision denying Pirelli Tyre's separate rate application was premised upon Commerce's finding that the Chinese Government through Chinese state-owned shareholders controlled Pirelli Italy's Board of Directors, thus controlling Pirelli Tyre's day-to-day operations.  Final IDM at 17 (P.R. 226).  However, as demonstrated by the opening brief, this factual conclusion is completely contradicted by substantial evidence.  In fact, there is substantial evidence that the SASAC-supervised shareholders had no ability to control day-to-day management of Pirelli Italy much less its subsidiary, Pirelli Tyre, due to specific mechanisms  that were set forth in those documents governing the agreement among the shareholders and the operation of Pirelli Italy.

As we demonstrate below, Defendant and Defendant-Intervenor fail to rebut record evidence showing Pirelli Italy's day-to-day management was insulated from the influence SASAC-controlled shareholders by, again, specific mechanisms, that were explicitly adopted to prevent such influence.

1.   **Contrary to Commerce's conclusion, substantial evidence demonstrates that Pirelli Italy's CEO, Tronchetti Provera, had exclusive day-to-day management authority**

Plaintiffs' opening brief noted that the most egregious part of Commerce's separate rate analysis was Commerce's failure to appreciate the significance of the fact that the Italian national CEO, Tronchetti Provera, had full authority to appoint all operational management of Pirelli Italy.  *See* Pl. Br. 35.  The opening brief demonstrated that Commerce completely failed to understand the significance of these undisputed facts to its SRA analysis.  Pl. Br. 35-37.

In their response briefs Defendant and Defendant-Intervenor respond to this avalanche of evidence by simply asserting the conclusion that Pirelli Companies had not demonstrated Tronchetti Provera exclusive authority to select management or prevent board members from influencing day-to-day operations. Def. Br. 19.  Def.-Int. Br. 18. However, beyond repeated assertions of the ultimate legal conclusion, neither Defendant nor Defendant-Intervenor undertake any serious attempt to address ample evidence in the record demonstrating that the appointment of Tronchetti Provera as CEO and Vice Chairman limited any *de facto* control from SASAC-controlled entities, and to ensure the business culture that pre-dated any China investment.

Indeed, neither Defendant nor Defendant-Intervenor say anything about the key evidence establishing that Chem China had no influence over Pirelli Italy or Pirelli Tyre. Such key evidence includes:

- The 2017 Shareholders Agreement, recognized the pivotal role of Tronchetti Provera as chief executive officer and Vice Chairman of Pirelli Italy, and acknowledged its quality prerogatives to direct and manage

NONCONFIDENTIAL

Pirelli's business, as <u>conditions essential</u> for preserving Pirelli's industrial history. Pirelli SRA, Ex. 10, Tab A, 2017 Shareholders Agreement, (Section 4.2) (P. R. 93).

- The 2017 Shareholders Agreement provide that Tronchetti Provera participated in the appointment of up to [                    ] of Pirelli Italy, and that one of the members is Tronchetti Provera himself.  *Id.* (Section 4.2).

- The 2017 Shareholders Agreement establish that Tronchetti Provera "shall be delegated the *exclusive* power and authority concerning the ordinary management of Pirelli {Italy} and of the Pirelli group". *Id.* (Section 4.4).

- The 2017 Shareholders Agreement grant Tronchetti Provera the power to propose to the Board of Directors resolutions on Pirelli Italy's significant matters, including; (i) approval of the business plan and annual budget of Pirelli and its group companies, as well as any material amendments thereto; (ii) approval of industrial partnerships or strategic joint ventures of Pirelli. *Id.* (Section 4.4).

- The 2017 Shareholders Agreement require that any possible decision taken by Pirelli Italy's Board of Directors against the relevant proposal submitted by Tronchetti Provera shall be motivated and in any case take into account "the best interests of Pirelli". *Id.* (Section 4.4).

- Under the 2017 Shareholders Agreement Tronchetti Provera will identify Pirelli Italy's top managers. In addition, Tronchetti Provera will be in charge of the day-to-day management of Pirelli Italy, the implementation of the business plan and the recruitment and promotion of key personnel of Pirelli Italy.  *Id.* (Section 4.7)

- Pirelli Italy's management during POR consisted of eight members, all Italian nationals selected by Tronchetti Provera to carry out Pirelli Italy's business operations. Pirelli SRA at Ex. 16D (C.R.57).

- CNRC agreed to each of these limitations. *Id.*

Again, neither Defendant nor Defendant-Intervenor undertake any attempt to dispute these limitations.  As such, neither has provided compelling argument that Commerce's ultimate conclusion satisfies the substantial evidence standard.

NONCONFIDENTIAL

> **2.   Defendant does not address evidence in the record showing that upon the relisting of Pirelli Italy, Chinese state-owned shareholders ceased to have management and coordination activity over Pirelli Italy**

In their opening brief Plaintiffs demonstrated that that Commerce's ultimate conclusion did not address the substantial evidence showing that, upon the relisting of Pirelli Italy, Chinese state-owned shareholders ceased to have management and coordination activity over Pirelli Italy.  Pl. Br. 37-40.  In its response brief, Defendant argues that this argument should be dismissed because "part of the information in which Pirelli is relying is not on the record."  We interpret this "part" as referring to the Italian law. Def. Br. 12-13.

However, Defendant's response brief argument conveniently fails to acknowledge that, aside from the Italian law, the evidentiary record clearly demonstrates (i) that Chinese State-owned shareholders effectively ceased management and coordination upon re-listing; (ii) that ceasing management and coordination implied preventing any influence by SASAC-controlled entities.  As we explain below, the Italian law now before this Court only confirms what was already in the record:

- ▪ 2017 Shareholding Agreement establishing that (A) no resolutions concerning the activities and/or business of Pirelli Italy (and/or activities and business of its subsidiaries), will be subject to a prior approval to be taken at the level of Marco Polo International Italy S.p.A. ("Marco Polo")[5] and (B) no resolution concerning the vote of Marco Polo in the shareholder's meeting of Pirelli Italy will be subject to (i) prior approval by either the Marco Polo shareholders meeting or the Class B Shareholders

---

[5] [

         ]. See Pirelli SRA, Ex. 5 (C.R. 43).

meeting or (ii) to special majorities within the Board of Directors of Marco Polo."

Pirelli SRA at Ex. 10, Tab A, 2017 Shareholders Agreement, (Section 3.2.5) (P.R. 93).

- The 2017 Shareholder Agreement further provides that (i) Pirelli Italy is be subject to the exercise of any activity of management and coordination in accordance with and by virtue of Articles 2497 et seq. of the Italian Civil Code and (ii) Pirelli Italy will accordingly recognize the termination of the exercise of any activity of management and coordination by Marco Polo effective as of the Date of Completion.

*Id.*

- In its meeting dated July 28, 2017, the newly appointed Board of Directors of Pirelli took note of the separate Resolution by Marco Polo regarding the cessation, following the start of Pirelli's Italy trading, of the direction and coordination of Pirelli Italy. Pirelli SRA, Ex. 19, Board of Directors Meeting Minutes, (P.R.93). From that moment, Pirelli Italy (and consequently – Pirelli Tyre) was autonomous from its shareholders and no longer subject to any instructions or guidelines derived from CNRC.

Pirelli SRA at pp. 20-21 (P. R. 89).

- Pirelli Italy's press release dated August 31, 2017 expresses that Pirelli Italy will no longer be subject to any "management and coordination activity on the part of controlling shareholders, whether direct or indirect, or any other company or entity". Such circumstance "will further reinforce Pirelli's and its management's autonomy in defining and managing industrial, economic and financial strategies".

Pirelli SRA, Ex. 11, Press release, (P.R. 93).

- Pirelli 2017 Annual Report's explanation as to what it means that Pirelli Italy is no longer subject to any management and coordination activities, from Marco Polo, CNRC and ChemChina:

> {T}he Board of Directors of Pirelli has determined that, from the First Trading Day {4 October 2017}, **Pirelli is no longer subject to any management and coordination** activities considered typical, neither by Marco Polo nor by other companies or entities (including CNRC and Chem China) and therefore, by way of example:

> 1. Pirelli conducts relations with customers and suppliers in full autonomy without any external interference

Pirelli SRA at Ex. 9, 2017 Annual Report, p. 205, (P.R. 91).

In short, the response briefs of Defendant and Defendant-Intervenor simply echo Commerce silence and thereby ignore the evidentiary record establishing that, upon the relisting of Pirelli Italy, Chinese state-owned shareholders ceased to have management and coordination activity over Pirelli Italy.

## C.   The Arguments of Defendant and Defendant-Intervenor Concerning The Relevance of Italian Corporate Law Provisions Should Be Rejected

In their opening brief Plaintiffs Pirelli Companies explained, as they had done before Commerce during the AD review, how the operation of Italian corporate law, with which Pirelli Italy (as an Italian corporation) had to comply, was further evidence of the inability of Chinese state-owned shareholders to control the management of Pirelli Italy. Pl. Br. 44-46, (citing Pirelli SRA at 17 (P.R. 89); Pirelli's Case Brief at 38 (P.R. 210)).

In their response brief, both Defendant an Defendant-Intervenor attempt to persuade to this Court to ignore this argument because, supposedly, the referenced Italian law provisions constitutes facts not on the record. Def. Br. 6, 18-19.  Defendant further expresses its disagreement that Pirelli was not required to put documents of foreign law on the record for Commerce to consider. Def. Br. 13, n.4.

Defendant does not, however, cite any prior practice or case law to support its view that Rule 44.1 of the Trade Court's Rules does not apply in this situation. Defendant also does not justify why Commerce could ignore every detailed explanation

provided by Pirelli on its obligations under Italian law.  Pl. Br. 45. Similarly, Defendant does not contest that Commerce never requested the Italian laws during the administrative proceeding or signaled any deficiency despite being central to their Final Determination.

Next, Defendant and Defendant-Intervenor argue that if Plaintiffs' argument is accepted, the proper recourse would be to remand for Commerce to consider the Italian law, as otherwise the Court would be performing an impermissible *de novo* review. Def. Br. 13. n.4; Def.-Int. Br. 20.  The Trade Court Rules, however, specifically authorize this Court to consider "all relevant material" concerning a foreign country's law "whether or not submitted by a party." USCIT Rule 44.1.  This Court thus can assess what the meaning of a foreign law is without exceeding the standard of review.  Indeed, Defendant does not contest Plaintiffs invocation of Rule 44.1.

Defendant-Intervenor errs in citing *Nuove Industrie Elettriche di Legnano S.p.A. v. United States*, 739 F. Supp. 1567 (Ct. Int'l Trade 1990) to argue Italian law should be rejected as factual information connected to the substantial evidence standard. Def.-Int. 20.  Defendant-Intervenor omits that, in that case the Court rejected respondent's motion to strike the <u>opinion</u> of an Italian law firm, and 28 Italian additional legal documents, <u>not the text of the legal provision itself</u>. The Court considered that the relevant documents addressed the legal question regarding the liability for anti-dumping duties of a successor company under Italian law.  *Nuove Industrie*, 739 F. Supp. at 1570.  The Court denied that such information constituted an "expansion of the record" or "information beyond presented to ITA." *Id.* at 1571. In the case at hand, the Italian law addresses purely legal

questions regarding the limits and obligations of Italian listed companies that are at the heart of this case.  Each of these points were thoroughly addressed by Pirelli and rejected by Commerce.  Defendant-Intervenor support on *G &G Prods. LLC v. Rusic*, 902 F.3d 940, 950 (9th Cir. 2018) is equally misplaced, since in that case parties did not properly raise the legal issue or submitted the legal texts during the *judicial* proceeding.

As we have noted, Rule 44.1 of the Trade Court Rules conforms to the Federal Rules of Civil Procedure which "provides flexible procedures for presenting and utilizing material on issues of foreign law by which a sound result can be achieved with fairness to the parties." See Fed. R. Civ. P. 44.1 note (1966).  Accordingly, there can be little question that this Court is entitled to review the relevant Italian legal provisions as a question of law.

### D. Commerce's Conclusion That The Minority Chinese State-Owned Shareholder Could Influence Pirelli Tyre's *Export Activities* Is Unsupported by Substantial Evidence

The last subsection of Plaintiffs' opening brief demonstrated that, contrary to Commerce's insinuation in its final determination, there is no evidence whatsoever that the Chinese Government exercised de facto control over Pirelli Tyre's <u>export activities</u>. In fact, all the record evidence demonstrates the contrary.  *See* Pl. Br. 46-49.

Although Defendant's response brief purports to address this argument, it really does not.  Rather, this part of Defendant's response brief is premised almost entirely on Commerce's core theory that the minority share of the SASAC-controlled entities is <u>by itself</u> sufficient factual grounds to deny Pirelli Tyre a separate rate.  Def. Br. 17.  Absent from this section is any discussion of the record evidence indicating that export prices are

set in the United States.  Pirelli SRA at Ex. 15 (C.R. 56).  Or stated differently,

Defendant's response brief does not undertake any real attempt to challenge the factual

argument that "{t}here is simply no evidence that Chem China, the Silk Road Fund, or

any arm of the government of China can somehow control the price negotiations

performed by a U.S. company, Pirelli USA."  Pl. Br. 49.

Defendant suggests that it can ignore this evidentiary flaw because the cases cited

by Pirelli address different *de facto* criteria.  Def. Br. 19-20.  This argument, however,

misconstrues the role of the export activities link in test requiring establishing a

connection between Chinese government-controlled entities and the activity consisting in

setting the prices. Indeed, Defendant's argument does little to rehabilitate the factual gap

in Commerce's underlying determination.  As we argue at length above, Commerce must

link the basis for its control finding to export activities.  Commerce's policy is that "the

test focuses on controls over the decision-making process on export-related investment,

pricing, and output decisions at the individual firm level." Policy Bulletin 05.1 at 1

(emphasis supplied).  The fact that pricing is negotiated by an entity about which

Commerce had made no attempt at a control finding is directly relevant to the Court's

consideration of this issue.

Even if Defendant were correct and the Court could ignore the precedent cited by

Pirelli because those cases were based on a different *de facto* criteria, Commerce would

still have to grapple with the facts on this record and square them with Policy Bulletin

05.1.  Commerce failed to do so in the Final Results and Defendant's arguments do

nothing to excuse that failure.

As such, neither Defendant nor Defendant-Intervenor have demonstrated that

Commerce's final determination is supported by substantial evidence.

**CONCLUSION**

For all of the foregoing reasons, Pirelli Companies respectfully request that the Court hold null and void the AD determination at issue, and remand for Commerce to reissue its AD determination consistent with the following instructions: assign Pirelli Tyre the AD rate applicable to separate rate respondents.

Respectfully submitted,

/s/ Daniel L. Porter

Daniel L. Porter
James P. Durling
James C. Beaty
Ana Amador

*Counsel for Pirelli Tyre Co., Pirelli Tire LLC, and Pirelli Tyre SpA*

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2010 using a proportionally spaced typeface 13 point Times New Roman font.

In accordance with the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth in the Chambers Procedures. Specifically, excluding those exempted portions of the brief as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 6,991 words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

<u>**/s/** Daniel L. Porter</u>

**Curtis, Mallet-Prevost, Colt & Mosle LLP**
1717 Pennsylvania Avenue, NW
Washington, D.C., 2006